UNITED STEELWORKERS OF AMER-
ICA, AFL–CIO, Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent,

Northwest Engineering Company,
Intervenor.

NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

NORTHWEST ENGINEERING COM-
PANY, Respondent,

United Steelworkers of America, AFL–
CIO, Intervenor.

Nos. 18921, 20211.

United States Court of Appeals
District of Columbia Circuit.

Argued Nov. 22, 1966.

Decided March 24, 1967.

Petitions for Rehearing Denied
April 21, 1967.

Mr. Michael Gottesman, Washington, D. C., with whom Mr. Elliott Bredhoff, Washington, D. C., was on the brief, for petitioner in No. 18,921 and intervenor in No. 20,211.

Mrs. Janet Kohn, Atty., N. L. R. B., with whom Messrs. Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Warren M. Davison, Atty., N. L. R. B., were on the brief, for respondent in No. 18,921 and petitioner in No. 20,211.

Mr. Walter S. Davis, Milwaukee, Wis., of the bar of the Supreme Court of Wisconsin, pro hac vice, by special leave of court, with whom Mr. E. Riley Casey, Washington, D. C., was on the brief, for respondent in No. 20,211 and intervenor in No. 18,921. Messrs. O. S. Hoebreckx, Milwaukee, Wis., and Richard P. McLaughlin, Washington, D. C., also entered appearances for respondent in No. 20,211 and intervenor in No. 18,921.

Before BASTIAN, Senior Circuit Judge, and LEVENTHAL and ROBINSON, Circuit Judges.

LEVENTHAL, Circuit Judge.

██ We are called upon to review an order of the National Labor Relations Board issued on September 24, 1964, 148 N.L.R.B. 1136, and amended after further hearings on May 3, 1966, 158 N.L. R.B. No. 48. The facts and issues are fully detailed in those opinions and we pause only to refer to the most salient findings. The Board found that after the petitioner, United Steelworkers (Union), began its organizing drive at the Green Bay, Wisconsin shovel and crane plant of Northwest Engineering Co. (Company), the Company responded with a flurry of promises and threats, all de-

signed to an impermissible degree to fob off unionization. The Board's findings of fact are conclusive on us if supported by substantial evidence on the record as a whole. National Labor Relations Act, 61 Stat. 146 (1947), as amended, 29 U.S.C. § 160(f) (1964); Administrative Procedure Act, 5 U.S.C. § 706. While the evidence is hardly overwhelming, our evaluations are irrelevant because, after examining the record, we have concluded that the Board's findings do represent reasonable interpretations of the evidence.

We turn to the Board's remedies. The Board issued the customary order requiring the Company to cease and desist from interferences with union activity, and in addition set aside a certification election adverse to the Union, and ordered the Company to bargain with the Union. Both Union and Company protest the validity of the order, the Union on the ground that it does not go far enough, the Company on the ground that it goes too far. We affirm.

■■■ Section 10(c) of the Act, 29 U.S.C. § 160(c) (1964), authorizes the Board when it has found a violation to "issue and cause to be served on such person an order requiring such person to cease and desist from such unfair labor practice, and to take such affirmative action including reinstatement of employees with or without back pay, as will effectuate the policies of this [Act] * * *." In fashioning remedies the Board is drawing on its peculiar expertise and reservoir of informed judgment gained from continuous and intimate study of labor relations problems. Because of this, courts must pay special deference to the Board's choice of a remedy, see Fibreboard Paper Prod. Corp. v. NLRB, 379 U.S. 203, 215–217, 85 S. Ct. 398, 13 L.Ed.2d 233 (1964). "[I]t is usually better to minimize the opportunity for reviewing courts to substitute their discretion for that of the agency." Consolo v. FMC, 383 U.S. 607, 621, 86 S.Ct. 1018, 1027, 16 L.Ed.2d 131 (1966). With this caution in mind, we cannot say it was an abuse of discretion for the

Board to fail or refuse to grant the Union's prayer that it "award to the employees * * * the benefits they would most likely have achieved had bargaining occurred" or "order the Company to bargain now with the Union over benefits to be provided for the retroactive period."

■■■ We likewise reject the Company's objection challenging the remedy as excessively disproportionate to the violation charged. The 1964 opinion and order of the Board found a violation of Section 8(a) (1) of the Act, 29 U.S.C. § 158(a) (1) (1964), in that the Company interfered with, coerced, and restrained its employees in the exercise of their rights under Section 7 to organize and bargain collectively. In addition to the customary cease and desist order, the Board set aside the previous certification election, which the Union had lost by a slim vote, and ordered a new one. Even though there had been no charge or finding of a violation of Section 8(a) (5), which proscribes refusals to bargain with representatives of employees, the Board later, on the Union's motion, reopened the proceedings. It was duly found, by both the Examiner and the Board, that prior to the Company's unfair labor practices a majority of the employees in the appropriate bargaining unit had signed union authorization cards. Cf. Amalgamated Clothing Workers (Hamburg Shirt Corp.) v. NLRB, 125 U.S.App. D.C. 275, 371 F.2d 740 (decided December 15, 1966). In its 1966 Supplemental Decision and Order the Board directed the Company to bargain with the Union without the necessity of a new election.

In attacking this bargaining order the Company relies on the recent Second Circuit case of NLRB v. Flomatic Corp., 347 F.2d 74, 77–80 (1965). In that opinion the court refused to enforce a bargaining order entered to rectify a violation of Section 8(a) (1) alone. Judge Anderson writing for the court stated that "restraint" was indicated in regard to the dictation of the "strong medicine" of a bargaining order, because of its troublesome tendency to encroach on the employees' Section 7 right *not* to organ-

ize a labor union and the Section 9(c) (1) right to a secret ballot election.[1] Judge Anderson implies that a bargaining order would be approved only when the Company's conduct consisted of a "broad-gauged campaign" that was "flagrantly hostile to the organizing efforts" of the Union, where there were "glaring violations." He states that a bargaining order is inappropriate in the case of "a borderline, unaggravated § 8(a) (1) violation, standing alone," resulting in only "a moderate unbalancing of an election by an employer." The opinion concludes that in such a case "a more appropriate remedy" is a cease and desist order coupled with the granting of a new election.

In our view the beacon with the light that guides this court is not the *Flomatic* opinion, but the partial dissent of Judge Hays, 347 F.2d at 80–81. As we have stated, the choice of remedies is primarily within the province of the Board. The Board has the responsibility for deciding what relief is most "appropriate" and in the absence of a clear abuse of discretion we will not interfere. Even where the particular remedy carved out by the Board has an impact on other values protected by the National Labor Relations Act, it is the Board that has the primary duty of reconciling sometimes divergent interests. It is not judicial abdication to treat with respect the agency's determination as to the powers properly invoked in coping with a problem. Philadelphia Television Broadcasting Co. v. FCC, 123 U.S.App.D.C. 298, 300, 359 F.2d 282, 284 (1966). The inquiry is whether on the basis of the evidence it had before it the Board adopted a remedy reasonably calculated to effectuate the policies of the Act.

The Supreme Court has recently re-emphasized the established rule that courts must give deference to the choice of remedy made by the administrative agency, unless it reflect so gross an abuse of power as to be arbitrary. See Consolo v. FMC, *supra;* FCC v. WOKO, Inc., 329 U.S. 223, 227–228, 67 S.Ct. 213, 91 L.Ed. 204 (1946). In the particular area of federal regulation of labor relations the courts do not have a charter to insist upon especially strong evidence of violation as a precondition to an affirmative remedy within the Board's jurisdiction. NLRB v. Walton Mfg. Co., 369 U.S. 404, 407, 82 S.Ct. 853, 7 L.Ed.2d 829 (1962); NLRB v. Camco, Inc., 340 F.2d 803, 808 (5th Cir.), cert. denied, 382 U.S. 926, 86 S.Ct. 313, 15 L.Ed.2d 339 (1965).[2] In the present case the Board's findings establish not only a violation of Section 8(a) (1), but also an interference with the bargaining agent designated by a majority. We are unable to say that it was arbitrary for the Board to conclude that a reasonable vindication of the Act and its purposes is best served by returning these parties to the *status quo ante* and compelling the Company to commence bargaining.

The Union's petition to review is denied, and the Board's petition to enforce is granted.

So ordered.

---

1. In Local 57, ILGWU (Garwin Corp.) v. NLRB, 126 U.S.App.D.C. ——, 374 F.2d 295 (decided January 11, 1967), cert. denied 387 U.S. ——, 87 S.Ct. 2078, 18 L. Ed.2d 1328 (1967), this court gave similar reasons for refusing to enforce a bargaining order against a "run-away shop." However, in *Garwin*, unlike this case, the order set aside would not have served to protect any Section 7 rights of employees who chose the Union as their representative.

2. Compare FCC v. Allentown Broadcasting Corp., 349 U.S. 358, 75 S.Ct. 855, 99 L.Ed. 1147 (1955), where the Court rejected a contention that the preponderance of testimony must be "very substantial" to warrant an agency in overturning an Examiner's finding.