**JUPITER ASSOCIATES, INC.,**
**Appellant,**

**v.**

**FEDERAL COMMUNICATIONS COMMISSION, Appellee,**

**Radio Elizabeth, Inc., Intervenor.**
**No. 22145.**

United States Court of Appeals
District of Columbia Circuit.

Argued Feb. 27, 1969.
Decided July 2, 1969.

Mr. Robert M. Booth, Jr., Washington, D. C., for appellant.

Mr. Edward J. Kuhlmann, Counsel, Federal Communications Commission, with whom Messrs. Henry Geller, Gen. Counsel, John H. Conlin, Associate Gen. Counsel, and Mrs. Lenore G. Ehrig, Counsel, Federal Communications Commission, were on the brief, for appellee.

Messrs. Robert W. Coll and Carl R. Ramey, Washington, D. C., entered appearances for intervenor.

Before BAZELON, Chief Judge, and TAMM and ROBINSON, Circuit Judges.

TAMM, Circuit Judge:

Three mutually exclusive applications were filed with the Federal Communications Commission in 1962 for new standard broadcast stations (AM) in the northeastern part of New Jersey. Each application proposed to operate on the frequency of 1530 kilohertz and consequently the applications were designated for a consolidated hearing. Following this hearing, in December, 1963, the trial examiner issued his Initial Decision,

awarding the station to Radio Elizabeth rather than appellant or Somerset County Broadcasting Co. The unsuccessful applicants filed exceptions and the Commission's Review Board, after hearing oral argument, agreed with the trial examiner and ruled that Radio Elizabeth should be awarded the license. Applications for review by the Commission were then filed by appellant and Somerset.

While these applications for review were pending, this court issued its decision in Miners Broadcasting Service, Inc. v. FCC, 121 U.S.App.D.C. 222, 349 F.2d 199 (1965). The issuance of this decision spurred the Commission to issue on December 27, 1965, its Policy Statement on Section 307(b) Considerations for Standard Broadcast Facilities Involving Suburban Communities, 2 F.C.C. 2d 190 (1965). Since both appellant's and Elizabeth's proposals placed 5 mv/m contours over a portion of New York City, the FCC remanded the case for further hearings in order to determine whether the Radio Elizabeth and Jupiter applications should be considered as applications for the central city (New York) rather than the suburb (Elizabeth or Matawan).[1] In addition, the Commission ordered that the issues to be resolved in this proceeding be enlarged to include the admission of evidence bearing on the considerations presented by the new 307(b) Policy Statement. Pursuant to the Commission's dictates further hearings were conducted in 1966 and 1967 and, upon conclu-

sion, the hearing examiner issued a Supplemental Decision concluding that neither application should be considered as one for New York City and that Radio Elizabeth should be awarded the license. Upon appeal, the Commission's Review Board issued a Supplemental Decision reaffirming the grant to Radio Elizabeth. Jupiter filed an application for review by the Commission, en banc, but this was denied (App. 129). Following the denial of appeal, Jupiter brought this action in our court pursuant to Section 402(b) of the Communications Act of 1934, as amended, 47 U.S.C. § 402(b) (1964).[2] For the reasons hereinafter stated, we affirm the Commission's action.

I

Prior to reaching a consideration of appellant's allegations of error it is necessary, as a background, to illustrate briefly the relevant merits of each applicant as a potential broadcast licensee. The Commission's powers and duties in this area have been delegated by Congress in Section 307(b) of the Communications Act of 1934, as amended, 47 U.S.C. § 307(b) (1964), as follows:

> In considering applications for licenses * * * the Commission shall make such distribution of licenses * * * as to provide a fair, efficient, and equitable distribution of radio service * * *.

In carrying out its above-prescribed function the Commission in this case was con-

1. In essence, the § 307(b) *Policy Statement* announced that any time an applicant's proposed 5 mv/m contour would penetrate the geographic boundaries of any community with (1) a population of over 50,000 *and* (2) at least twice the population of the applicant's specified community a presumption would arise that the applicant really intended to serve the central city rather than its specified community. The *Policy Statement* then went on to delineate which factors and circumstances are to be considered in determining whether the applicant can rebut this presumption. In this case both Jupiter and Radio Elizabeth successfully rebutted the presumption.

This court has recently approved the *Policy Statement* as a valid enactment within the delegated authority of the Commission. Woodland Broadcasting Co. v. FCC, 134 U.S.App.D.C. 264, 414 F.2d 1160 (decided June 6, 1969). *See also* Miners Broadcasting Service, Inc. v. FCC, D.C.Cir., No. 21937, decided March 20, 1969 unreported opinion and Northeast Broadcasting, Inc. v. FCC, 130 U.S.App. D.C. 278, 400 F.2d 749 (1968).

2. Somerset County Broadcasting Co., the other unsuccessful applicant, did not appeal the Commission's final determination.

fronted with at least two applicants[3] who were completely qualified in all respects to operate a broadcast facility. Due to the limited space available on the frequency spectrum, however, only one could be chosen.

Radio Elizabeth's application specifies that its station location will be the city of Elizabeth, New Jersey, which is part of the urbanized New York–Northeast New Jersey area and has a population of 107,698 (1960 Census). Elizabeth is the seat of Union County (pop. 504,-255) and has been characterized as a heavily industrialized and commercialized area. At present it does not have an AM, FM, or television station. Its principal industries are sewing machines, pharmaceutical products, automotive, and gas and chemicals. These industries employ about 32,000 out of the total 137,837 employees who labor within the city limits of Elizabeth. Elizabeth has a police department (240 officers), a fire department (14 companies), three major hospitals, 62 churches, 30 civic and/or charitable organizations, and 9 major banks. There is, however, only one newspaper, the *Elizabeth Daily Journal*. The city is presently under the mayor form of government and the city government is comprised of numerous agencies, boards, departments and special organizations. The city is a seaport and it only recently completed construction of a 250 million dollar port project. Elizabeth is located approximately 14 miles from New York City and is the 130th largest city in the United States. Finally, it should be noted that only two cities in the country have populations larger than Elizabeth that do not also have standard broadcast stations.

■ By comparison, appellant's application specifies that its station location will be Matawan, New Jersey, which

has been characterized as a "rural" area with a population of 5,097 (1960 Census). Matawan has no AM, FM, or television station at present. There are 158 business establishments located in Matawan and these are mainly retail and service organizations since the borough has no substantial amount of manufacturing. Matawan has two churches, a police department, five volunteer fire departments, a planning board, a first aid squad, and a public library. It has one weekly newspaper (*Matawan Journal*) and is governed by a council form of government. In addition, it has a local court which handles traffic and other minor offenses. Matawan Borough consists of an area of approximately 2.5 square miles and is located approximately 4.2 miles from New York City (of which approximately three miles are over water).[4] The major highways serving Matawan are the Garden State Parkway and New Jersey Routes 18, 34, and 79. Finally, Matawan has a first class Post Office which has an annual revenue in excess of $150,000.

Detailed comparisons of the attributes of both cities are set out in the examiner's Initial Decision and his Supplemental Decision. Based upon these types of comparisons the examiner concluded that "the controlling factor here revolves around each respective community's need for transmission service * * * (and) [w]hile size cannot be construed necessarily as the dominant aspect, it certainly cannot be passed over lightly" (App. 23). The examiner went on to compare the two communities and concluded that the other comparisons were "overwhelmingly favorable to the City of Elizabeth" (App. 25).

## II

With this background in mind, we consider now appellant's contentions of er-

---

3. In his Supplemental Initial Decision the examiner also found that Somerset County Broadcasting Co. was "basically qualified" (App. 52).

4. Appellant has stressed the fact that Matawan is located 45 land miles away from New York City while Elizabeth is

located only 14 land miles away. We feel that the Commission correctly found that this fact was "not of decisional significance" (App. 45) since there is no evidence in the record that any of the New York stations devoted a significant amount of their programming to the needs of either Matawan or Elizabeth.

ror. Jupiter's appeal in this case presents myriad challenges to various aspects of the Commission's proceedings. Basically, all of appellant's arguments are procedural in nature and can be summarized into a claim that had the FCC examiner considered the proper factors and evidence during the hearings, the inescapable conclusion would be that Jupiter and not Radio Elizabeth should have been awarded the license. In essence, however, after the wheat is separated from the chaff, appellant's meritorious arguments are reduced to two. First, appellant claims that the Commission wrongfully determined and thereby limited the size of its community. We feel, however, that appellant's arguments on this score are unpersuasive.

■ Our starting point is Section 73.30(a) and (b) of the Commission's Rules, 47 C.F.R. § 73.30(a) and (b) (1968). This rule states in pertinent part:

(a) Except as provided in paragraph (b) of this section, each standard broadcast station will be licensed to serve primarily a particular city, or community which will be specified in the station license * * *.

(b) Stations will be licensed to serve more than one city, town, political subdivision, * * * or community only where * * * the station can and will originate a substantial number of local live programs from each such place * * *. A station licensed to serve more than one place shall * * * maintain main studios in each such place.

This rule makes specific provision for an applicant to apply either for one city or community (subsection (a)) or for service of more than one community (subsection (b)). Indeed, the Commission, when confronted with a situation where the applicant specified the city of Austell, Georgia, as its station location and then argued that its "community" for § 307(b) purposes should be comprised of the entire contiguous "South Cobb area," held that

Section [73.30(a)] of the rules requires that a station serve a "particular city, town, political subdivision or community." [The applicant] could have chosen any one of several communities. However, it chose to apply for a station to serve Austell. Having made this choice, it cannot now contend that it proposes to serve a conglomerate of communities called "South Cobb." [5]

Appellant, however, has seized upon the word "community" in the rule and contends that evidence concerning Matawan Township and Keyport was wrongfully excluded by the trial examiner in both hearings.[6] Appellant employs an army of words accompanied by a modicum of logic in an apparent attempt to obfuscate what is actually happening here. It seems clear, however, that appellant purposefully chose to apply only for the *community of Matawan Borough* and then complained throughout the hearing that it was being precluded from showing how it served other communities contiguous to Matawan Borough. In fact, appellant admits as much in its brief:

In its original application, Jupiter gave the location of the proposed station as "Matawan-Keyport" * * *. Because of difficulties encountered by other applicants in satisfying the most rigid requirments of the Commission's dual-city designation rule [Section 73.30(b)], Jupiter amended its application * * * to specify the proposed station's location as "Matawan, New Jersey."

5. Five Cities Broadcasting Co., Inc., 35 F.C.C. 501, 503 (1963).

6. Appellant argues throughout its brief that "the Examiner ruled that only evidence concerning Matawan would be received and considered. Even then he did not distinguish between the Borough and the Township." Brief for Appellant at 37. We find that this contention is not supported by the record, as at the beginning of the first hearing the Examiner specifically stated that "[a]ll references to Matawan herein are to the Borough * * *." (App. 8 n.3.)

Brief for Appellant at 36–37. Thus, we feel that since appellant chose to file only for the Borough of Matawan (by amending its application to that effect) this is the "community" for which it must establish *transmission needs.*[7] Both the Commission's rules and its adjudicative interpretation thereof compel this conclusion and we see no legal basis for altering it.

■ Appellant also contends that it was precluded from using more recent population statistics than those available from the 1960 Census. This contention does not require reversal for several reasons. First, appellant insists upon combining Matawan Borough with Matawan Township and Keyport in an attempt to reach a population total fairly competitive with that of Elizabeth. The bald fact remains, however, that in 1960 the population of Elizabeth was 107,000 and that of Matawan Borough was only 5,097. Even if 1969 population statistics were utilized, can appellant really argue meaningfully and realistically that

the population of Matawan Borough would skyrocket to around 100,000 while at the same time the population of Elizabeth would remain in static repose? Moreover, the record discloses that the examiner did consider population statistics for the entire interference-free service area of all the applicants (App. 23). These statistics further buttress his conclusion that a license award to Elizabeth would better serve the "public convenience, interest or necessity"[8] than would an award to appellant.

■ Thus, we feel that appellant must apply for a particular community rather than for a nebulous mass of unspecified territory and that the examiner correctly determined that the relevant community was Matawan Borough.[9] Appellant was unable to meet the requirements for a dual-city application (which they specifically chose not to apply for) as set forth in § 73.30(b) of the Commission's rules and cannot now transform its application into a dual-city one. Further, we find that the examiner's conclusion

7. Although appellant must establish the "transmission needs" of the community for which it applied, the examiner did allow into evidence data concerning the importance of Matawan Borough to and its relationship with its surrounding communities (App. 7–11, 23, 41). Appellant, however, seems to want to transform the hearing into one in which the major consideration is not why Matawan Borough should have a broadcast station but why Matawan Township, or Keyport, or Holmdel (the neighboring communities) should have a station. These considerations were admitted in a secondary fashion and not as the primary consideration, which must be the community applied for by the applicant.

8. Section 307(a) of the Communications Act of 1934, as amended, 47 U.S.C. § 307(a) (1964).

9. It should be noted that virtually all the authorities that appellant cites involve the undisputed proposition that the absence of technical "incorporation" of an area does not necessarily preclude it from qualifying as a "community." *See* Mercer Broadcasting Co., 13 P & F Radio Reg. 891, 909 (1957) ; The Connecticut Electronics Corp., 5 P & F Radio Reg. 469 (1950). This is not to say, however,

that applicants may *aggregate all the cities and towns in their service area in order to enlarge their specified station location* for the purpose of § 307(b) comparisons. We feel that, of necessity, the Commission must be able to draw workable administrative guidelines in this area. In this regard, neither the courts nor the Commission has ever held that applicants may *never* claim more than one incorporated area as their station location. Indeed, the Commission has held that "[t]here is no hard-and-fast rule by which it can be judged whether a particular population grouping is to be classified as a community * * *." Mercer Broadcasting Co., *supra,* at 909. Such determinations must be made on an ad hoc basis by the Commission through the application of *its traditional criteria for determining whether a community exists. See generally* Gulf Beaches Broadcasting Co., Inc., 8 P & F Radio Reg. 476, 501 (1955) ; Huntington Broadcasting Co., 6 P & F Radio Reg. 569, 572 (1950) ; Kent-Ravenna Broadcasting Co., 22 P & F Radio Reg. 605 (1961). Thus, in this case we hold simply that the Commission did not err in finding that appellant's "community" was limited to the area designated in its application.

as to the relevant population of each application was not based solely upon erroneous or out-dated statistics and, in any event, we will not require a new hearing since under the 1969 statistics the result is clearly the same.

### III

Appellant's second tack for reversal consists of a claim that the examiner erred by incorrectly evaluating and refusing to receive comparative evidence concerning the availability of transmission service for Elizabeth and Matawan by existing stations. We do .not find this contention persuasive either.

It should be noted at the outset that appellant, while complaining here on appeal about the lack of comparative programming evidence, did not attempt at the Commission level to designate a programming service issue. In this regard, the Commission has held, rather plainly, that

> the administrative process will be expedited, without prejudice to any of the parties, by permitting the adduction of such programming evidence only in a proceeding in which specific programming issues have been designated upon a threshold showing by one or more of the parties to the proceeding that such programming evidence may be of decisional significance.[10]

Although appellant did not urge specification of any such programming issue, we need not make our disposition on this narrow ground because we find that, on its merits, appellant's argument in this regard fails.

 On the remand hearing, in order to rebut the § 307(b) presumption, both appellant and Radio Elizabeth were permitted to and actually did adduce considerable evidence to establish un-met broadcasting needs in their respective communities. Indeed, the Commission's order remanding the case for further hearing specified in part as follows (App. 50):

IT IS FURTHER ORDERED, That the issues in this proceeding ARE HEREBY ENLARGED as follows: * * * (2) The extent to which the needs of each specified station location are being met by existing standard broadcast stations * * *.

Thus, it is patently obvious to us that the very comparative evidence which appellant claims was omitted was in fact actually adduced in the second hearing. Upon inspection, we discern that the record contains specific testimony showing that none of the three Newark stations directs any substantial portion of its programming to the specific needs of the community of Elizabeth (App. 87–92, 101, 113–16). Appellant seems to contend, however, that merely because the studios of these three Newark stations are physically located in fairly close proximity to Elizabeth (and not to Matawan) this necessitates an automatic grant of the license to Matawan. We do not consider this a realistic alternative. The crucial consideration must be to what extent these Newark stations program for Elizabeth's needs, *not* where their studios are located. Thus, we feel that the record shows that the examiner did admit comparative evidence relating to what extent each of the applicant's programming needs were being fulfilled by existing stations. We feel that the Review Board's conclusion that "[the three Newark stations'] programming is inadequate in terms of meeting the separate and distinct needs and interests of * * * [Elizabeth] in any significant manner" is supported by substantial evidence in the record below (App. 115).

We conclude therefore that the Commission's decision to award an AM license to Radio Elizabeth rather than appellant is supported by substantial evidence in the record and consequently it must be

Affirmed.

10. Cookeville Broadcasting Co., 19 P & F Radio Reg. 897, 899 (1960).