331 F.2d 774
 118 U.S.App.D.C. 28
 William S. HALPERN and Louis N. Seltzer d/b as Burlington
Broadcasting Company, Burlington, New Jersey, Appellants,
v.
FEDERAL COMMUNICATIONS COMMISSION, Appellee, Mount
Holly-BurlingtonBroadcasting Co., Inc., Intervenor.
 No. 17988.
 United States Court of Appeals District of Columbia Circuit.
 Argued Feb. 27, 1964.
Decided March 19, 1964.
 
 Mr. Arthur Scheiner, Washington, D.C., with whom Mr. Philip Bergson, Washington, D.C., was on the brief, for appellants.
 Mr. Howard Jay Braun, Counsel, Federal Communications Commission, with whom Messrs. Max D. Paglin, Gen. Counsel, and Daniel R. Ohlbaum, Assoc. Gen. Counsel, Federal Communications Commission, were on the brief, for appellee. Mr. Ernest O. Eisenberg and Mrs. Ruth V. Reel, Counsel, Federal Communications Commission, also entered appearances for appellee.
 Mr. Herbert M. Schulkind, Washington, D.C., with whom Mr. Benito Gaguine, Washington, D.C., was on the brief, for intervenor.
 Before WILBUR K. MILLER, BURGER and WRIGHT, Circuit Judges.
 BURGER, Circuit Judge.
 
 
 1
 This is an appeal from a decision and order of the Federal Communications Commission released June 14, 1963 granting a construction permit to Intervenor John J. Farina trading as Mt. Holly-Burlington Broadcasting and denying the application of appellants and others. The permit covers a new standard broadcast station on 1460 kc, 5 kilowatts, directional antenna, daytime only.
 
 
 2
 After hearings were concluded the Examiner released an Initial Decision recommending a grant of the construction permit to Burlington County Broadcasting Company, but that applicant has not sought review of the Commission's decision which rejected the Examiner's recommendation and granted the application of Intervenor Farina.
 
 
 3
 In view of our disposition of the appeal, we need not undertake an extended and detailed discussion of the facts. It is sufficient to point out that in light of the Examiner's doubts as to the reliability of Farina's representations concerning contacts made in testing community needs, added to his lack of candor on finances and representations as to the whereabouts of $53,000 of the $54,000 of claimed 'deposits,' the problem cannot be disposed of by characterizing Question 3 of the Commission's Application form as 'ambiguous.' Plainly the answers given were not correct. Farina is a university graduate with an Economics major and we cannot accept the explanation that he understood Question 3 of the Application form to refer to money in banks and in family hiding places, when a sum of $54,000 was involved. Even accepting his explanation as to what he thought Questions 3(a), (b) and (c) called for does not by any means dispose of 3(d), which required him to state whether the $54,000 was subject to any
 
 
 4
 'Conditions of deposit (in trust, savings, subject to check, on time deposit, who may draw on account and for what purpose, or other condition) (.)'
 
 
 5
 To this question Farina, with the aid of counsel highly experienced in FCC matters, responded:
 
 
 6
 'Savings and checking accounts may be drawn upon by John J. Farina for any purpose(.)'
 
 
 7
 We cannot assume that the Application was made out on anything other than what Farina told counsel. Farina does not contend otherwise. This answer was not true, first because at least $53,000 of the sum claimed as 'funds on deposit in bank or other depository' was not in any 'Savings or checking account,' as the answers to 3(b) and 3(d) stated, and second because Farina's testimony to the Examiner was that this large sum was in a family 'receptacle' hidden at home and available to him only at the sufferance of his parents. In this context failure to reveal third party control of a claimed bank account is a grave misrepresentation. The materiality and ultimate impact of the failure to make full and accurate disclosure in the written application must be evaluated in light of seriously challenged representations concerning community contacts noted by the Examiner who conducted the hearings and observed the witnesses first hand. See Universal Camera Corp. v. National Labor Relations Board, 340 U.S. 474, 496, 71 S.Ct. 456, 95 L.Ed. 456 (1951).
 
 
 8
 Although Farina's explanation of the source of his $54,000 is unique if not bizarre, it is neither our function nor purpose now to evaluate the accuracy of his statements; that is primarily for the Commission. Viewing the record as a whole, we cannot escape the conclusion that the Commission failed to make or require adequate inquiry into that subject. As a minimum the Commission should upon remand have the Examiner inquire into (a) corroboration by Farina's parents or others having actual knowledge of the alleged family arrangements for custody of the $53,000 or $54,000 when the application was executed by Farina;[1] (b) full inquiry into Farina's financial arrangements for future operations; (c) inquiry into the detail of organizational expenses alleged by Farina; (d) inquiry into Farina's surveys on community needs by some means which will satisfy the Commission that interviews claimed were in fact conducted substantially as alleged.
 
 
 9
 We do not intend to intimate a view that the cash available to Farina is not his own or that his proposed financing program is not appropriate. The present record is inadequate for anyone to make valid conclusions. We retain jurisdiction and remand for the development of a more adequate record.
 
 
 10
 Remanded for further proceedings.
 
 
 11
 J. SKELLY WRIGHT, Circuit Judge (concurring).
 
 
 12
 It is with some reluctance that I concur in the court's opinion. The matters which are to be re-investigated on remand have already been passed on by the Commission, and they are matters which fall within its competence. Moreover, I agree with the Commission that its questionnaire is ambiguous, and it is understandable why an applicant would not want to disclose in a public record that there was $54,000 in cash in a receptacle in his home. Nevertheless, further inquiry by the Commission may clear the air and dispel some of the doubts.
 
 
 
 [1]
 That Farina was able to deliver $53,000 in currency in a satchel to his lawyer after filing the application is hardly adequate corroboration for the claimed source, especially in light of Farina's challenged claims about consultation with persons who came before the Examiner and denied knowing Farina. The need to know that the financing of Farina's project was not from some undisclosed principal requires this subject to be explored more fully than was done