**MINERS BROADCASTING SERVICE, INC., Appellant,**

**v.**

**FEDERAL COMMUNICATIONS COMMISSION, Appellee,**

Monroeville Broadcasting Company, Intervenor.

No. 18492.

United States Court of Appeals District of Columbia Circuit.

Argued Oct. 7, 1964.

Decided June 17, 1965.

Burger, Circuit Judge, dissented.

Mr. Charles J. McKerns, Washington, D. C., with whom Mr. Earl R. Stanley, Washington, D. C., was on the brief, for appellant.

Mr. Howard Jay Braun, Counsel, F. C. C., with whom Messrs. Henry Geller, Gen. Counsel, and Daniel R. Ohlbaum, Associate Gen. Counsel, F. C. C., were on the brief, for appellee.

Messrs. Robert M. Booth, Jr., John L. Tierney and Joseph F. Hennessey, Washington, D. C., entered appearances for intervenor.

Before BAZELON, Chief Judge, EDGERTON, Senior Circuit Judge, and BURGER, Circuit Judge.

BAZELON, Chief Judge.

This is an appeal from an order of the Federal Communications Commission granting intervenor's application for a standard broadcast facility and denying appellant's mutually exclusive application. Both applicants requested a Class II station on the frequency 1510 kilocycles to be located in a suburb within the Pittsburgh Urbanized Area and to serve parts of Pittsburgh. This case again raises the issue of the Commission's characterization of the community

to be served for purposes of its § 307 (b) analysis.[1]

The intervenor proposed a station with 250-watt power and a nondirectional antenna at Monroeville, Pennsylvania, a borough 3.5 miles east of Pittsburgh. Monroeville, with a population of 22,446, has no local transmission service. Intervenor's proposal would provide primary service to one third of Pittsburgh. The appellant requested a change from its present Class III station of 500 watts at Ambridge, Pennsylvania, to a Class II, 10,000-watt station at Ambridge-Aliquippa, which would bring a first local transmission service to Aliquippa, Pennsylvania. Ambridge and Aliquippa are contiguous boroughs located 10.5 and 12 miles northwest of Pittsburgh and having populations of 13,865 and 26,369 persons. Appellant's proposal provides for an antenna directing the signal toward Pittsburgh, 98 percent of which would receive a 2.0 millevolt per meter primary signal.

The Commission held that appellant's proposal must be considered a Pittsburgh application for purposes of § 307(b) because "it proposes to operate on a Class II channel with 10,000 watts power and, by its directionalized signal, to cover 98% of the population of Pittsburgh, as well as much of the remaining urbanized area, with a 2.0 mv/m service." However, intervenor's application was characterized as a Monroeville application because of its lower power, omni-directional signal, and service to only one third of Pittsburgh. Comparing the needs of these communities for transmission service, the Commission held that Monroeville had a greater need for its first service than Pittsburgh for its ninth. Since the Commission considered reception service irrelevant because of the numerous services available,[2] it granted intervenor's application.

The appellant argues that the Commission's characterization of the communities is not adequately supported by the record and by the reasons given in the Commission's opinion. We agree and therefore remand the case to the Commission for reconsideration and fuller explanation of its order.

■ "Only under exceptional circumstances have two politically separate cities been treated by the Commission as a single community." Hayward F. Spinks, 24 Pike & Fischer R.R. 1055, 1056c (1963). Yet in this case the Commission in effect has held that Pittsburgh, Ambridge, and Aliquippa are a single community. In so holding, the Commission extended an exception to the general rule which was established in Huntington Broadcasting Co., 5 Pike & Fischer R.R. 721 (1949), rehearing denied, 6 Pike & Fischer R.R. 569 (1950), affirmed, 89 U.S.App.D.C.

1. Section 307(b) of the Federal Communications Act provides that, "In considering applications for licenses, * * * the Commission shall make such distribution of licenses, frequencies, hours of operation, and of power among the several States and communities as to provide a fair, efficient, and equitable distribution of radio service to each of the same." 47 U.S.C. § 307(b) (1952). In applying this provision to mutually exclusive applications, the Commission determines which "community" each applicant would serve; if the communities differ, it decides which community has the greatest need for service and awards the license to the applicant that would serve that community; if they do not differ, it compares the abilities of the applicants to fulfill the needs of the single community. See, e.g., Consolidated Broadcasting Industries,

Inc., 19 Pike & Fischer R.R. 1374 (1960).

Other cases involving the Commission's characterization of the "community" include Dacre v. Federal Communications Comm'n, No. 18956, decided June 10, 1965; Huntington Broadcasting Co. v. Federal Communications Comm'n, 89 U. S.App.D.C. 222, 192 F.2d 33 (1951).

2. Appellant argues that it should have been given preference in the § 307(b) issue because it would more efficiently use the frequency by providing reception service to almost twice as many persons as intervenor. But we do not consider this issue since the case must be remanded to the Commission on other grounds, and, upon remand, it may decide that reception service is significant or that its findings of fact are inadequate to support the decision that reception service is insignificant.

222, 192 F.2d 33 (1951).[3] There the Commission held that, in cases involving an applicant for a central city and a suburban applicant which requests a power so strong that it would serve the entire urbanized area, no determinative § 307(b) issue exists, and both applicants are to be treated as proposing service to the central city.[4] Thus, the Commission refused to allow the suburban applicant to obtain the preference accorded to "first local transmission services" because its proposal suggested that it intended, as did the urban applicant, to serve the urbanized area. Instead, the applicants were judged on their comparative ability to serve the needs of the entire area.[5]

The Commission's use of the *Huntington* doctrine in this case had far different results. Rather than allowing the § 307(b) issue to be avoided, it predetermined that issue in Monroeville's favor by designating the Miners' application as an application for an urban area served by eight outlets while designating Monroeville's as one for a suburb served by none. Because of the preference accorded first local transmission services, analysis of any factor other than number of broadcast outlets was precluded. This is obviously a much more drastic application of *Huntington* than to deprive one party of what is deemed to be, under the facts of the case, an unfair preference over the other. It creates, rather than destroys, inequalities. That *Huntington* was an approach furthering the public interest when used to widen inquiry does not necessarily mean that it is such when used to narrow inquiry. The use of the "exceptional" rule of *Huntington* in this case is permissible only if the Commission clearly recognizes it as an extension of the rule and gives adequate reasons for it. The Commission has failed to do so.[6]

3. *Accord*, Armin H. Wittenberg, Jr., 19 Pike & Fischer R.R. 755 (1961); Rossmoyne Corp. (WCMB), 7 Pike & Fischer, R.R. 117 (1951).

4. For "when suburban communities propose to use a Class II channel with high power with the result that substantial coverage is provided to the central city, the regional nature of the proposed service is deemed to override the applicant's proposal to serve primarily the needs of the suburban community, and a proposal for such suburb should be regarded as for the central city and comparatively considered with a proposal for such central city." Massillon Broadcasting Co., 2 Pike & Fischer R.R.2d 409, 415 (1964).

5. The Commission has recently applied the same doctrine in holding that the § 307(b) issue is not determinative as among applicants all of whom apply for suburban stations in an urbanized area but propose powers, frequencies, and classes of stations suggesting that they will serve the entire region. See Seven Locks Broadcasting Co., 3 Pike & Fischer R.R.2d 177 (1964); Massillon Broadcasting Co., *supra* note 4. It has not done so uniformly, however, having treated at least one applicant in the pre-*Huntington* manner. See Rockland Broadcasting Co., 2 Pike & Fischer R.R.2d 39, reconsideration denied, 2 Pike & Fischer R.R.2d 820 (1964), affirmed *sub nom.* Dacre v. Federal Communications Comm'n, No. 18956, decided June 10, 1965.

6. The Commission has decided two similar cases on the ground given in this case. Speidel Broadcasting Corp. of Ohio, 25 Pike & Fischer R.R. 723 (1963); Radio Crawfordsville, Inc., 25 Pike & Fischer R.R. 533 (1963). Neither of these cases contains an adequate explanation of the extension of the rule. As we said in Pinellas Broadcasting Co. v. Federal Communications Comm'n, 97 U.S.App.D.C. 236, 238, 230 F.2d 204, 206 (dictum), cert. denied, 350 U.S. 1007, 76 S.Ct. 650, 100 L.Ed. 869 (1956), "The rationality of some basic theses as to the public good is self-evident, and of some others is so well known as to require judicial notice. But it may sometimes be that the supporting philosophy of a general policy on such matters is so obscure as to require explanation. In such a case, if the conclusion is challenged as arbitrary, it would see that the court, in the process of adjudicating that issue, can require a statement of the premises for and the reasoning toward the general policy."

Standards determining the scope of the *Huntington* doctrine in comparative hearings must be established. Its scope is now somewhat obscure. *Compare* Seven Locks Broadcasting Co., 3 Pike & Fischer R.R.2d 177 (1964), and Burlington Broadcasting Co., 25 Pike & Fischer R.R. 633

This extension of *Huntington* would create the obvious problem of establishing standards to distinguish between two suburban applicants, both of which would serve some parts of the central city and urbanized area. Since the Commission could determine the grant of a license by a mere characterization of the communities to be served, it would have to articulate reasons for its characterization. It is not clear to us that the facts of this case compel a distinction between appellant and intervenor. That intervenor would serve only one third of Pittsburgh while appellant would serve 98 percent of it might be an adequate factual basis for a distinction. However, it might be as rational to hold both applicants to be Pittsburgh stations [7] or both to be suburban stations.[8] The Commission must state the relevance of the difference between service to one third of Pittsburgh and service to 98 percent of it or make additional findings of fact in support of its determination.[9]

The case is remanded for proceedings consistent with this opinion.

So ordered.

BURGER, Circuit Judge (dissenting):

The majority remands to the Commission for a fuller exposition of its reasons for the Section 307(b) characterizations made in this case.

The basis for the holding is the majority's view that the Commission's action amounted to a significant extension of the doctrine of *Huntington Broadcasting Co. v. F CC*, 89 U.S.App.D.C. 222, 192 F.2d 33 (1951). The Commission's asserted expansion of the *Huntington* doctrine is thought by the majority to lie in the fact that application of the principle of that case on this record "narrowed" the Commission's further inquiry as to suitability of the applicants.

I believe the majority's position erroneous, for the *Huntington* principle seems to me in no way to depend on the consideration advanced. That the application of that doctrine together with the

(1963), remanded on other grounds, *sub nom.* Halpern v. Federal Communications Comm'n, 118 U.S.App.D.C. 28, 331 F.2d 744 (1964), *with* Rockland Broadcasting Co., *supra*, note 5, affirmed *sub nom.* Dacre v. Federal Communications Comm'n, No. 18956, decided June 10, 1965. For instance, it is not clear whether facts other than the proposed power, class of station, and frequency are relevant to the characterization of the community. There is some indication that the distance of the suburb from the central city is significant, Huntington Broadcasting Co., *supra*, and it should be relevant if the real issue is whether an applicant would provide an outlet of local self-expression for the suburb or for the entire urban area. Also the size of the suburb, its economic vitality, and its independence from the central city are relevant if the Commission applies the *Huntington* rule to determine whether the applicant would cater to the needs and desires of the population of the central city, rather than the suburb, in an attempt to obtain advertising revenues from businesses in the central city.

7. That Monroeville, subsequent to the grant of a license, could apply for an increase in power allowing it to serve a greater portion of the Pittsburgh area is a relevant consideration. The parties with standing to object to such an application are limited and might not include the appellant. See 47 U.S.C. § 309(d) (1952).

8. The station location is usually presumed to be the § 307(b) "community" for transmission purposes. See Rockland Broadcasting Co., *supra* note 5; Kent-Ravenna Broadcasting Co., 22 Pike & Fischer R.R. 605 (1961).

9. Our view would have been the same even if there were several Monroeville applicants. This is not a case in which the Commission determined the § 307(b) issue in the orthodox manner, preferring Monroeville over *Ambridge-Aliquippa* as the community most needing a first local service. Nothing we have said bars the Commission from resorting to that approach upon remand. Our concern is with the use of the *Huntington* doctrine to exclude applicants, where previously it had been used only to broaden the base of comparative inquiry.

preference under Section 307(b) for first local transmission services results in diminution or, as here, elimination of the standard comparative issue has no relevance to a proper characterization of communities under that Section.

The only question for decision here is whether there was a reasonable basis for the Commission's characterization of Intervenor's application as one for Monroeville and Appellant's as one for Pittsburgh. In making those classifications, the Commission considered proposed coverage, power and antenna pattern. These are appropriate factors under the *Huntington* standard and I find no reason to require more.

I would therefore affirm.