**NORTHERN INDIANA BROADCASTERS, INC., Appellant,**

v.

**FEDERAL COMMUNICATIONS COMMISSION, Appellee,**

**South Bend Tribune, Michiana Telecasting Corporation, Intervenors.**

**No. 24071.**

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 3, 1971.

Decided Jan. 21, 1972.

---

**1352**

———◆———

Mr. Robert M. Booth, Jr., Washington, D. C., for appellant.

Miss Katrina Renouf, Counsel, Federal Communications Commission, with whom Messrs. Richard E. Wiley, Gen. Counsel at the time the brief was filed, and John H. Conlin, Associate Gen. Counsel at the time the brief was filed, were on the brief, for appellee. Mr. Henry Geller, Gen. Counsel at the time the record was filed, also entered an appearance for appellee.

Mr. John J. Dempsey, Washington, D. C., for intervenor Michiana Telecasting Corporation.

Messrs. Corwin R. Lockwood, Richard S. Rodin and William A. Bradford, Jr., Washington, D. C., were on the brief for intervenor South Bend Tribune.

Before LEVENTHAL and WILKEY, Circuit Judges, and FRANK M. JOHNSON, Jr.,* Chief Judge, U. S. District Court for the Middle District of Alabama.

WILKEY, Circuit Judge:

The basic issue presented for review is whether the Federal Communications Commission was correct in denying Northern Indiana's application for a license to operate a radio station in Mishawaka, Indiana, on the grounds that the applicant failed to rebut the presumption created by the Commission's Policy Statement on "Suburban Communities." [1] We affirm the order of the Commission.

I. *The Agency Policy and Judicial Review Standards*

The FCC "Suburban Communities" Policy Statement creates the presumption that an application for a license in a suburban community is in reality an application for a license to serve the adjoining central city area. For an applicant to rebut this presumption, the Commission required that:

During the course of an evidentiary hearing to determine, inter alia, whether an applicant will realistically serve his specified community or another, larger community, that applicant will be required to rebut the presumption that will have arisen because of his proposed coverage. Thus, in addition to the usual 307(b) evidence concerning the independence of a suburb from its central city, an applicant

---

* Sitting by designation pursuant to 28 U.S.C. § 292(c) (1970).

1. Policy Statement on Section 307(b) Considerations for Standard Broadcast Facilities Involving Suburban Communities, 2 F.C.C.2d 190 (1965), reconsideration denied, 2 F.C.C.2d 866 (1966).

will be expected, under our new policy, to adduce evidence at the hearing showing the extent to which he has ascertained that his specified community has separate and distinct programming needs. The parties will then be permitted to show the extent to which that community's needs are being met by existing standard broadcast stations, and the applicant will be expected to show the extent to which his program proposal will meet the specific, unsatisfied programming needs of his specified community. At the same time, although it would not necessarily be determinative, such an applicant would be expected to adduce evidence as to whether the projected sources of advertising revenues within his specified community are adequate to support his proposal as compared with the sources from all other areas.[2]

The court's role in reviewing the findings of an administrative agency is not so expansive as to constitute a complete review *de novo*. Rather, as this court recently spelled out in some detail in Greater Boston Television Corporation v. FCC with respect to the scope of its review:

> It begins at the threshold, with enforcement of the requirement of reasonable procedure, with fair notice and opportunity to the parties to present their case. It continues into examination of the evidence and agency's findings of facts, for the court must be satisfied that the agency's evidentiary fact findings are supported by substantial evidence, and provide rational support for the agency's inferences of ultimate fact. Full allowance must be given not only for the opportunity of the agency, or at least its examiners, to observe the demeanor of the witnesses, but also for the

reality that agency matters typically involve a kind of expertise—sometimes technical in a scientific sense, sometimes more a matter of specialization in kinds of regulatory programs. . . . A court does not depart from its proper function when it undertakes a study of the record . . . for this enables the court to penetrate to the underlying decisions of the agency, to satisfy itself that the agency has exercised a reasoned discretion, with reasons that do not deviate from or ignore the ascertainable legislative intent.[3]

In treating the kind of issue raised by the appeal here, this court likewise observed in *Greater Boston* that "[i]ts supervisory function calls on the court to intervene not merely in case of procedural inadequacies, or bypassing of the mandate in the legislative charter, but more broadly if the court becomes aware, especially from a combination of danger signals, that the agency has not really taken a 'hard look' at the salient problems, and has not genuinely engaged in reasoned decision-making."[4]

## II. *The Agency Decision on Review*

In the instant case the appellant contends that the Review Board did not reach a reasonable result in its conclusion that Northern Indiana had failed "to adduce evidence of any specific or separate [programming] needs in Mishawaka."[5] Northern Indiana asserts instead that, first, at least some separate and distinct programming needs may be presumed from certain facts, essentially demographic and organizational, concerning the characteristics of the community, and, second, that the record in this case contains evidence of programming needs in Mishawaka

2. 2 F.C.C.2d 190, 193 (1965).

3. *Greater Boston Television Corporation v.* FCC, 143 U.S.App.D.C. 383, 392, 444 F. 2d 841, 850 (1970), cert. denied, 402 U.S. 1007, 91 S.Ct. 2192, 29 L.Ed.2d 429 (1971) (footnotes omitted).

4. *Id.*, at 851 (footnotes omitted).

5. 13 F.C.C.2d 546, 555 (1968). The Review Board also observed in a memorandum opinion and order, that "the Board was unable to find on the basis of the record evidence, that Mishawaka had *any* separate and distinct needs." 15 F.C.C.2d 264, 269 (1968) (emphasis in original).

which are separate and distinct from those of the adjoining central city of South Bend. On the basis of these assertions, Northern Indiana urges that this case be remanded to the Commission, at which time the FCC would be required to weigh the evidence, which Northern Indiana alleges the Review Board did not consider, to determine if it is sufficient to rebut the Commission's Policy Statement.

Such a remand, however, would be superfluous in view of the record before the court here. Despite Northern Indiana's assertion that there was some evidence of separate and distinct programming needs presented and that the Review Board failed to consider this evidence, this cannot in light of the record before us be accepted as accurate. As the Board itself stated:

> While Northern Indiana has put great emphasis on its claim of extensive efforts to meet this issue, the fact is that it has adduced virtually no evidence responsive to the specific questions posed by the issue. It has merely compiled voluminous lists of persons and organizations which by the appellant's own admission are designed to establish nothing more than the fact, virtually always conceded at the outset in cases of this type, as the policy statement specifically notes, that Mishawaka has its own viable municipal institutions, some of which could benefit from additional radio service. . . . First, . . . for example, while the record reveals the existence of substantial minority groups in the community, it is not even alleged that they have any needs; their existence once established, they are never referred to again in connection with existing needs, present service or Northern Indiana's own proposal. Second, to the extent that the surveys which the applicant made do tend to establish some generalized needs in the designated community, they totally

fail to establish the crucial fact that such needs are distinguishable from the needs of the rest of the overall South Bend urban area.[6]

As this extract from the Board's findings makes clear, it is not a question of the Board not conceding the existence of and considering any evidence tending to suggest programming needs in Mishawaka separate and distinct from those in South Bend. Instead, the issue here presented is whether there was sufficient relevant evidence to override the Commission's Policy Statement—a question of the degree and type of evidence in the record, not of the existence of evidence in the first place.

■ While the Board concluded that the evidence which Northern Indiana presented to prove the existence of separate and distinct programming needs in Mishawaka was insufficient to rebut the presumption created by the Commission's Policy Statement, it is unnecessary for the court to reach this question. Instead, we have said we need only find that the Board fairly considered the evidence presented and reached a conclusion which is both reasonable and supported by substantial evidence:

> If the agency has *not* shirked [the] fundamental task [of taking a "hard look" at the relevant issues], . . . the court exercises restraint and affirms the agency's action even though the court would on its own account have made different findings or adopted different standards. . . . If satisfied that the agency has taken a hard look at the issues with the use of reasons and standards, the court will uphold its findings, *though of less than ideal clarity,* if the agency's path may reasonably be discerned, though of course the court must not be left to guess as to the agency's findings or reasons.[7]

On the basis of the record before us, we conclude that the Board took the requisite "hard look" and that its findings

6. 13 F.C.C.2d 546, 551 (1968).

7. Greater Boston Television Corporation, *supra,* at 851 (emphasis added).

are both reasonable and supported by substantial evidence.

### III. *Clarity in Agency Standards*

After having applied what we conceive is the proper standard for our judicial review of the agency's action, we consider briefly another standard—the standard of clarity in the FCC's Suburban Communities Policy which would give applicants a firm basis for determining what evidence is needed to rebut the presumption, or for making the kind of reasonable prediction of chances for success needed to warrant reasonable business men in making even the investment in planning, market-testing and preparing an application and engaging in a hearing.

The court would be remiss in the performance of its supervisory function over agency decision-making, however, if it did not take this opportunity to note that much of the difficulty encountered by the appellant here might have been avoided had the standards governing the Commission's decision to grant or withhold a license to an applicant for a suburban radio station under the Policy Statement been more precisely phrased. To say, as the Board did here, that "not only must [an applicant] show that [the needs and interests of the area] will be served but, in addition, he must show that the needs and interests of the specified location are distinguishable from the needs and interests of the central city, and that the 'specific, unsatisfied programming needs' established, will be fulfilled by his proposal,"[8] is of little practical assistance to the appellant and others similarly situated who wish to know *how* different these needs and interests must be to rebut the Commission's Policy Statement.

The relevant case law—Jupiter Associates, Inc.,[9] Naugatuck Valley Service, Inc.,[10] and Monroeville Broadcasting Company[11]—also does little to clarify these standards. For example, Northern Indiana relied on the Review Board statement that:

5. The demographic and community survey evidence, together with the testimony of Elizabeth's mayor, Thomas G. Dunn, and former mayor, Steven J. Berick, established clearly that Elizabeth is one of the Nation's major cities and that it has programming needs which are separate and distinct from either Newark or New York. These needs are traceable to the size of the city (107,698 persons), its industrialized nature, the different characteristics of the population, and its prominence as the trading center

8. 13 F.C.C.2d 546, 562 (1968). The Review Board had earlier provided in the instant case that to determine whether Northern Indiana's proposal would realistically offer a local transmission facility for its specified station location (Mishawaka) or for another larger community (South Bend), the relevant evidence would include:

(1) The extent to which the specified station location has been ascertained by the applicant to have separate and distinct programming needs;

(2) The extent to which the needs of the specified station location are being met by existing standard broadcast stations;

(3) The extent to which the applicant's program proposal will meet the specific, unsatisfied programming needs of its specified station location; and

(4) The extent to which the projected sources of the applicant's advertising revenues within its specified station location are adequate to support its proposal, as compared with his projected sources from all other areas. 2 F.C.C. 2d 938, 941 (1966).

Section (1) and (3) do not, however, specify what *types* or what *degree* of evidence is required to rebut the Commission's Policy Statement.

9. 12 F.C.C.2d 217 (29 March 1968), aff'd, Jupiter Associates, Inc. v. FCC, 136 U.S. App.D.C. 266, 420 F.2d 108 (1969).

10. 8 F.C.C.2d 755 (1967), aff'd *sub nom.* Northeast Broadcasting, Inc. v. FCC, 130 U.S.App.D.C. 278, 400 F.2d 749 (1968).

11. 12 F.C.C.2d 359 (1968), aff'd *sub nom.* Miners Broadcasting Co. v. FCC, D.C. Cir. No. 21,937 (1969) (unreported).

and seat of Union County (504,255 persons). . . .[12]

Yet the FCC itself elsewhere observed that this statement in Jupiter Associates, Inc., "merely exemplifies the obvious proposition that general data concerning the community are germane to the existence of separate and distinct programming needs."[13] Taken together, the two statements leave the next applicant devoid of any guidelines as to the type and degree of evidence required to rebut the Commission's Policy Statement.

■ This and similar statements in Naugatuck Valley Service, Inc.[14] and Monroeville Broadcasting Company[15] suggest that on the basis of its own murky precedents the Commission could have decided the instant case the opposite way without a violent intellectual wrench, a not very satisfactory state of affairs. We think it incumbent upon the Commission to clarify its standards for implementing its Suburban Communities Policy Statement, if the latter is to serve as a fair and reasonable means for regulating the grant or denial of requests for licenses to operate radio stations in suburban communities. This is put with some diffidence—for our last call for greater clarity[16] only served to bring forth the Statement which is today under attack as to its application, and an attack mounted by appellant here arguing that the Statement produced more confusion than it dispelled. We recognize the problems of gaining uniformity of interpretation when decisions in the first instance are made by different hearing examiners and reviewed by boards whose panel members also vary. But these same problems are faced by U.S. Districts Courts in the same circuit, or multi-judge District Courts, and to a great extent uniform interpretation is achieved. To identify problems is ob-

viously the first step toward solutions, hence we have pointed out the lack of clarity and resulting difficulty in securing uniformity of application in the FCC standards.

Affirmed.

---

12. 12 F.C.C.2d 217, 219 (1968).

13. FCC, Brief for Appellee, Northern Indiana Broadcasters, Inc. v. FCC, D.C. Cir. No. 24,071 (1971), at 16.

14. 8 F.C.C.2d 755, 777 (1967).

15. 12 F.C.C.2d 359, 365 (1968).

16. Miners Broadcasting Service, Inc. v. FCC, 121 U.S.App.D.C. 222, 349 F.2d 199 (1965).