**NEW RADIO CORPORATION, Appellant,**

v.

**FEDERAL COMMUNICATIONS COMMISSION, Appellee,**

**Orange County Broadcasting Company, Intervenor.**

**No. 85–1462.**

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 12, 1986.

Decided Nov. 7, 1986.

As Amended Nov. 14, 1986.

Samuel J. Buffone, Washington, D.C., for appellant.

Sue Ann Preskill, Counsel, F.C.C., with whom Jack D. Smith, Gen. Counsel and Daniel M. Armstrong, Associate Gen. Counsel, F.C.C., Washington, D.C., were on the brief, for appellee.

Seymour M. Chase, Washington, D.C., was on the brief, for intervenor.

Before EDWARDS, GINSBURG and STARR, Circuit Judges.

Opinion for the Court filed by Circuit Judge HARRY T. EDWARDS.

HARRY T. EDWARDS, Circuit Judge:

In this case, the appellant, New Radio Corporation ("New Radio"), challenges a decision of the Federal Communications Commission ("FCC" or "Commission") granting Orange County Broadcasting Company ("Orange County") authority to construct and operate a standard (AM) radio broadcast facility in Orange, California. The new AM service was designated to operate on the 830 kHz frequency. In a consolidated hearing in August of 1983, the Administrative Law Judge ("ALJ") considered five mutually exclusive applications for this frequency, each specifying a different community of license in southern California.

In an initial decision released on March 28, 1984,[1] the ALJ recommended an award to Orange County. The ALJ first determined that he was unable to give a 307(b) preference to any of the competing applicants.[2] Under section 307(b) of the Federal Communications Act (the "Act"),[3] where two or more mutually exclusive applicants have specified different communities of license, the FCC must determine the relative need to each applicant's proposed service area for a new reception service and the relative need of each applicant's proposed community of license for a new transmission service.[4] In considering this issue, the ALJ found that the applications for San Marcos (Western Radio Group), Orange (Orange County Broadcasting) and La Mirada (New Radio) indicated that these three communities were most in need of a first local outlet or transmission service; however, the ALJ concluded that "a choice among them on 307(b) criteria is hardly scrutable in the evidence."[5] He therefore recommended an award to Orange County on traditional comparative grounds.[6]

On appeal, the Review Board (the "Board") rejected the ALJ's determination that the evidence did not support a dispositive 307(b) preference.[7] However, the Board accepted the ALJ's recommended grant to Orange County, finding that, under a 307(b) analysis, Orange had the greatest need for a first local transmission service.[8] The Commission then denied New Radio's application for review.

Before this court, New Radio challenges the Commission's decision as inconsistent with agency and judicial precedent, and unsupported by substantial evidence. Because we find that the record clearly supports the Board's award of a 307(b) preference to Orange County, we affirm.

---

1. *Alessandro Broadcasting Co.,* 99 F.C.C.2d 12 (1984) (*"Initial Decision"*).

2. *Id.* at 51.

3. 47 U.S.C. § 307(b) (1982). Section 307(b) provides, in pertinent part:

    In considering applications for licenses ... when and insofar as there is demand for the same, the Commission shall make such distribution of licenses, frequencies, hours of operation, and of power among the several States and communities as to provide a fair, effi-

cient, and equitable distribution of radio service to each of the same.

4. *Kent-Ravenna Broadcasting Co.,* 44 F.C.C. 2603, 2606 (1961).

5. *Initial Decision,* 99 F.C.C.2d at 51.

6. *Id.* at 56–57.

7. 99 F.C.C.2d 1, 10 (Rev. Bd. 1984) (*"Review Board"*).

8. *Id.*

## I. BACKGROUND

In 1980, the Commission announced that it expected the 830 kHz frequency to become available for use in the Los Angeles area as a result of rule revisions assigning AM unlimited-time Class II stations to Class I-A clear channels, and invited interested parties to apply for the station assignment. *International Notification of AM Station Assignments*, 47 Rad. Reg.2d (P & F) 896, 897–98 (May 29, 1980). After receiving nine mutually exclusive applications from qualified applicants, the Commission designated the applications for hearing in a consolidated proceeding. Noting that, "[a]lthough most of the applications are for different communities, they would serve substantial areas in common," the Commission designated both a 307(b) issue and a contingent comparative issue for hearing. *Oceanside Radio, Inc.; Designating Applications for Consolidated Hearing on Stated Issues*, 48 Fed.Reg. 13260, 13264 (1983).

Of the five applicants that participated in the hearing, the ALJ determined that only three had demonstrated that their respective communities of license were "separate and distinct" communities for purposes of section 307(b). These were: Orange County, which specified the city of Orange, located approximately thirty-two miles from Los Angeles, with a 1980 population of 91,788; New Radio, which specified the city of La Mirada, approximately nineteen miles from Los Angeles, with a 1980 population of 40,986; and Western Radio Group, which specified the city of San Marcos, approximately one hundred miles from Los Angeles, with a 1980 population of 17,479.[9] In support of its claim that La Mirada possessed the "typical attributes" of a separate and distinct community, New Radio submitted a detailed factual exhibit describing La Mirada's history, area and population, type of government and its public

services, economic growth, business establishments, educational, transportation, cultural and recreational facilities and civic organizations. In its Proposed Findings of Fact and Conclusions of Law, New Radio sought a 307(b) preference for several reasons. First, it would provide a fourth reception service to the 120–square mile area surrounding La Mirada, and a fifth reception service to the surrounding 329–square mile area, thus providing additional reception services to a larger underserved area than any of the other applicants. Second, its daytime service would reach a larger area, in terms of population and geography, and its nightime service would reach a larger population, than would the corresponding service of any other applicant. Third, based on the community's "demographic, economic, governmental and other attributes," La Mirada had a greater need for local transmission service than the other communities at issue. Alternatively, New Radio argued that the wide-area coverage proposed by the applicants warranted eschewing a 307(b) analysis altogether in favor of a straight comparative analysis.[10]

The Review Board agreed with the ALJ that, although La Mirada should be considered a separate community under section 307(b), New Radio's proposed reception service advantages were too insignificant to warrant a 307(b) preference.[11] The ALJ had used a 307(b) analysis to determine that San Marcos, Orange and La Mirada were the communities most in *need* of first local transmission service. However, because he was unable to choose among them on 307(b) criteria, he relied on a straight comparative analysis in recommending the selection of Orange County. The ALJ never addressed New Radio's contention that the agency should assume wide-area service by all competing applicants and

---

**9.** *Initial Decision,* 99 F.C.C.2d at 49; *Review Board,* 99 F.C.C.2d at 9; Joint Appendix ("J.A.") 104, 111, 116.

**10.** J.A. 144–55. In advancing this "wide-area coverage" argument, New Radio never claimed to be invoking the so-called "*Huntington*" doc-

trine," see *Huntington Broadcasting Co. v. FCC,* 192 F.2d 33 (D.C.Cir.1951), hereinafter discussed in the Analysis section of this opinion.

**11.** *Review Board,* 99 F.C.C.2d at 7.

eschew a section 307(b)-based decision in favor of a decision based solely on standard comparative factors.[12] New Radio did not revive its "wide-area coverage" contention in the exceptions it submitted to the Review Board. The Board therefore did not address this alternative argument. The Board agreed with the ALJ that none of the applicants' proposed new reception service was sufficient to warrant a 307(b) preference. However, the Board disagreed with the ALJ's finding that Orange County did not deserve a dispositive 307(b) preference on the basis of *transmission service.* On this latter point, the Board noted that the Commission presumes that the most populous community (Orange) has the greatest need for a first local service, provided it has commensurately greater civic, cultural, religious, social and commercial activities. Because the evidence showed Orange to be "significantly more developed" than the other communities, the Board ruled that Orange merited a dispositive 307(b) preference.[13]

## II. ANALYSIS

### A. *Waiver of the "*Huntington *Doctrine" Issue*

█ Despite the appellant's belated contentions to the contrary, this case is principally concerned with the application of section 307(b). Most of the evidence submitted to the ALJ supported the use of a traditional 307(b) analysis to determine which of the communities, if any, had the greatest need for a first local transmission service. Indeed, New Radio argued strenuously before the ALJ that it deserved a decisive preference under 307(b). In its exceptions to the ALJ's Initial Decision, New Radio agreed with the ALJ's finding that no party enjoyed a decisive advantage under section 307(b); nonetheless, the appellant again maintained that if a 307(b) preference was warranted, that preference should go to New Radio.[14] Most importantly, however, New Radio never suggest-

ed to the Board that the facts warranted a traditional comparative analysis based on the so-called *Huntington* doctrine. On the evidence before it, and in light of the exceptions presented by the parties, the Board found that four of the proposed cities of license were separate and distinct communities with their own needs for a first local transmission service, and that, of these, Orange had the greatest need, thus justifying a dispositive preference under section 307(b).

Following the Board's decision, New Radio filed an application for review with the FCC, in which it argued for the first time that the case was governed by the *Huntington* doctrine. *See Huntington Broadcasting Co. v. FCC,* 192 F.2d 33, 35 (D.C. Cir.1951). The *Huntington* doctrine recognizes that, for proposals involving high-power frequencies, where a suburban community is so closely integrated with a central city that it is a mere appendage of the urbanized area, it should not be considered a separate community for purposes of section 307(b). *Alessandro Broadcasting Co.,* FCC 85–334, Order at 2 (released June 28, 1985), *reprinted in* J.A. 74. As recently construed by this court, *see Beaufort County Broadcasting Co. v. FCC,* 787 F.2d 645, 649 (D.C.Cir.1986), *Huntington's* premise is that, "where integrally related communities constitute a single metropolitan transmission service area, individual communities' needs should be presumed satisfied by the aggregate of stations in that area." In any case in which that presumption is warranted, a choice under section 307(b) cannot be made, and the choice becomes not "which of two communities show[s] the greater need for a new station, but ... which of two applicants would better serve the one large community which both desire[] to cover." *Huntington Broadcasting,* 192 F.2d at 35.

*Huntington* is the exception, and 307(b) the rule. *WHW Enterprises, Inc. v. FCC,* 753 F.2d 1132, 1135–36 (D.C.Cir.1985).

---

**12.** *Initial Decision,* 99 F.C.C.2d at 50–51.

**13.** *Review Board,* 99 F.C.C.2d at 10–11.

**14.** J.A. 158.

Once the agency has before it evidence that the applicants' proposed communities of license are separate communities for 307(b) purposes, as the Review Board clearly did here, any applicant may seek to invoke the alternative analysis of *Huntington.* While it may be assumed that the Commission can consider the *Huntington* exception on its own motion in an appropriate case, it is generally recognized that the burden of invoking an exception will fall on the party seeking to apply it. In other words, section 307(b) will apply according to its terms unless a party makes a timely request for the consideration of an exception such as the *Huntington* doctrine.

The record before us reveals that the appellant did not raise the *Huntington* issue until it had submitted its application for review by the full Commission. We reject New Radio's contention that its alternative argument before the ALJ—*i.e.*, that the Commission should eschew the 307(b) analysis because of the wide-area coverage proposed—was somehow the equivalent of an argument that the competing communities were integral parts of Los Angeles and that the *Huntington* exception therefore applied. Not only are these arguments distinctly different, but the first requires the Commission to redefine "community" in the AM radio context in a manner that it has expressly limited to the television context. *See Metro Broadcasting, Inc.*, 99 F.C.C.2d 688, 697–98 (Rev. Bd. 1984); *Cleveland Television Corp.*, 91 F.C.C.2d 1129, 1137 (Rev. Bd. 1982); *see also The Suburban Community Policy, the Berwick Doctrine and the De Facto Reallocation Policy*, 93 F.C.C.2d 436, 457 (1983) (*"Suburban Community Policy"*) (finding no basis in the rulemaking record for applying such a redefinition in the radio context).

As noted above, New Radio presented its case to the ALJ and Review Board almost entirely on 307(b) grounds. New Radio not only failed to suggest that the applicants' communities were integrally related to Los Angeles, but affirmatively and exhaustively demonstrated the separateness and independence of its own community of license, La Mirada, which was in fact the *nearest* of all the communities to the Los Angeles central city. Having thus chosen to present its entire *legitimate* case on 307(b) grounds, the appellant now seeks to escape the Board's unfavorable decision, rendered on those very grounds, by asserting that they were not the proper grounds to begin with. To permit such gamesmanship here would amount to giving New Radio two bites at the proverbial apple. Whatever claim might have been presented with respect to the *Huntington* doctrine was effectively waived by appellant's failure to raise the issue before the ALJ or the Board.[15]

## B. *Applicability of the* Huntington *Exception*

■ Even if we were satisfied that the appellant invoked *Huntington* in a timely manner, there would still be no basis upon which to overturn the judgment of the Commission in this case. New Radio failed to make any showing whatsoever on the relationship between the competing applicants' communities and the central city of Los Angeles, thus providing the ALJ and the Board with no evidentiary basis for applying the *Huntington* exception. In other words, appellant could not merely rely on the fact that the applicants' proposed communities of license were relatively near Los Angeles to presume the applicability of the *Huntington* exception. Indeed, with respect to AM service in particular (as distinguished from the television context), the Commission has thus far expressly declined to abandon its definition of "community" as "the community specified

---

**15.** We reach the merits of the *Huntington* argument only because the Commission did so, albeit briefly, in a footnote explaining its reasons for denying New Radio's application for review. We find it puzzling that the Commission even gave passing acknowledgment to the substance of New Radio's *Huntington* argument, since the Commission's alternative ground for rejecting an application of the *Huntington* exception—*i.e.*, New Radio's failure to raise the *Huntington* argument in a timely manner—made a decision on the merits unnecessary.

on the application" in favor of a definition that encompasses "the community actually receiving service." *Suburban Community Policy*, 93 F.C.C.2d at 457. Thus, it is clear that at the time these proceedings took place, the appellant had ample notice that the Commission did not have a policy of presuming that all communities in metropolitan areas are merely undifferentiated components of the larger metropolitan community.

In the absence of such a metropolitan-area presumption, the case law makes it clear that, in order to invoke the *Huntington* exception, the applicant must carry the burden of establishing the interdependence of the communities at issue. *See, e.g., WHW Enterprises*, 753 F.2d at 1134. A Review Board recently made this burden explicit. In *Debra D. Carrigan*, 100 F.C. C.2d 721, 729 (Rev. Bd. 1985), the Board explained that the factors it deems relevant in identifying cases to which *Huntington* applies are those cited by this court in *Miners Broadcasting Serv. v. FCC*, 349 F.2d 199, 201 n. 6 (D.C.Cir.1965): (1) power and class of station; (2) independence or interdependence of specified "community" to central city of "urbanized area"; (3) size and proximity of specified "community" to central city of "urbanized area"; and (4) signal population coverage and relevant advertising market. In its brief and in oral argument to this court, New Radio appeared to suggest that the evidentiary requirements of *Carrigan* and related cases may be circumvented by resort to certain presumptions. This view is plainly misguided.

■ First, there is no presumption that merely because two communities are closely situated, they will satisfy one another's radio transmission needs. In *Beaufort County Broadcasting*, we recognized, in the context of competing applications for high-power regional FM service specifying contiguous communities of license, that

[W]hen a license applicant has designated as its proposed community of license a *suburban community integrally a part of a larger metropolitan area*, and that

applicant has sought a license authorizing enough power to cover the wider area, *Huntington* has required the FCC to disregard "the corporate limits of the . . . city named in the applications" and to treat the proposed community as encompassing the entire metropolitan area.

787 F.2d at 652 (emphasis added). Although the FCC has relied on "the integral geographical, socio-political, and economic relationship typically enjoyed by a suburb with the surrounding urbanized area as a substitute for an affirmative showing that the stations in other, nearby communities provided adequately for the programming needs of the otherwise unserved suburb," *id.* at 653, nothing in *Beaufort County Broadcasting* suggests that the mere proximity of two communities to one another or to a central city will substitute for a showing of their integral relationship.

Second, there is no "Los Angeles presumption." We find no reason to conclude that every community located in the vast Los Angeles metropolitan area is so integrally related to the central city that it can never warrant a local radio broadcast facility. In *Pasadena Broadcasting Co. v. FCC*, 555 F.2d 1046 (D.C.Cir.1977), this court appeared critical of the FCC's treatment of the Los Angeles metropolitan area communities of Fullerton, Whittier and Pasadena as "a homogeneous part of Los Angeles," *id.* at 1049 n. 19, and in a recent decision the FCC expressly noted our reservations. *See Carrigan*, 100 F.C.C.2d at 726.

■ New Radio's reliance on a 1961 *Huntington* case as announcing a "Los Angeles presumption" is misplaced. The relevant passage in that case reads:

The Los Angeles Standard Metropolitan Area (SMA) includes the city of Los Angeles, the rest of Los Angeles County, and all of Orange County. Thus, by Census Bureau definition, the two counties are "essentially metropolitan in character and economically integrated with the Central City" of Los Angeles.

*Armin H. Wittenberg,* 30 F.C.C. 417, 418 (1961) (quoting U.S. BUREAU OF CENSUS, 1950 BULLETIN P–B5, at v–vi). In light of the case law and agency rulemaking since *Wittenberg,* the language from that case cannot be reasonably construed to support a presumption that the entire Los Angeles metropolitan area is but a single community for 307(b) purposes. The FCC's approach to the license allocation problem has evolved too far since 1961 for this dictum to be controlling. *See Beaufort County Broadcasting,* 787 F.2d at 652–53; *WHW Enterprises,* 753 F.2d at 1136–37. In particular, we note this court's strong skepticism in *Pasadena Broadcasting* as to the propriety of applying such a presumption to Los Angeles area communities. We also note that although the FCC has initiated a rulemaking on the question whether to accept Census Bureau characterizations in defining "communities," *see The Commission's Policy, Pursuant to Section 307(b) of the Communications Act, of Granting Comparative Preferences Within Metropolitan Areas,* 48 Fed.Reg. 19428, 19430–31 (proposed April 29, 1983) (*"Metropolitan Areas Rulemaking"*), it has expressly declined to adopt those concepts pending the outcome of that rulemaking. *See Faye & Richard Tuck, Inc.,* 103 F.C.C.2d 936, 941 (Rev. Bd. 1986); *Carrigan,* 100 F.C. C.2d at 730–31, 731 n. 19. For these reasons, license applicants may not rely on *Wittenberg* for the proposition that the entire Los Angeles metropolitan area is but a single community for 307(b) purposes. Likewise, if the FCC intends to entertain such a presumption in the future, it must say so and state its reasons.

As noted earlier in this opinion, the record before us demonstrates clearly that this was a 307(b) case from the start; and the record also reveals more than substantial evidence to justify the award to Orange County. There is absolutely no basis upon which to second-guess the judgment of the Commission in this case.

Had the appellant raised the *Huntington* issue earlier and adduced supporting evidence, we might have found this a more difficult case, because the FCC's policy on assigning licenses to communities in metropolitan areas once again appears to be in a state of confusion. For example, in denying New Radio's application for review, the Commission observed that, even if the appellant had raised the *Huntington* issue in a timely manner, the exception would not have been applicable because "Orange is a separate community with its own need for a first transmission service." [16] This terse dismissal is difficult to reconcile with the Commission's recognition in other cases that a given area can be "a cognizable community with local needs and interests" and yet be so integrally related to neighboring communities as to be part of a single larger community for 307(b) purposes. *Hispanic Owners, Inc.,* FCC 86–316 (released July 14, 1986); *see also Faye & Richard Tuck, Inc.,* 103 F.C.C.2d at 941; *Carrigan,* 100 F.C.C.2d at 735; *Seven Locks Broadcasting Co.,* 37 F.C.C. 82, 84–85 (1964) (separate communities in Washington, D.C. metropolitan area found to be integrally related to central city).

Another area of confusion concerns the weight that the FCC places on the regional nature of the proposed service and on the Census Bureau concepts of an "Urbanized Area" and a "Standard Metropolitan Statistical Area" ("SMSA"). Since inviting comment in 1983 on the propriety of adopting such enlarged definitions of "community" for 307(b) purposes, *see Metropolitan Areas Rulemaking, supra,* the Commission has expressly stated that it will continue to adhere to the *Miners/Carrigan* criteria pending formal adoption of a new standard. *See Carrigan,* 100 F.C.C.2d at 730–31. Now, more than three years after the notice of proposed rulemaking appeared, we are informed that the rulemaking is not under active consideration. Yet, in the same interval, the Review Board has on

---

**16.** J.A. 74.

several occasions used the SMSA concept to support its 307(b) determinations. *See, e.g., Faye & Richard Tuck, Inc.,* 103 F.C. C.2d at 940–41; *Voce Intersectario Verdad America, Inc.,* 100 F.C.C.2d 1607, 1609 (Rev. Bd. 1985). To the extent that the Commission intends to use the Census Bureau concepts at all, it must clarify their significance and apply them in a consistent fashion.

Although we recognize that the present state of the law surrounding the *Huntington* exception sometimes appear to be a muddle, the appellant was in no sense disadvantaged in this case. The appellant never raised the *Huntington* issue until the third stage of agency review, before the Commission. And, equally importantly, the appellant adduced no meaningful evidence in the record to satisfy the *Carrigan* test as a requisite to an application of *Huntington.* Instead, appellant made a belated attempt to rely on presumptions to overcome the obvious evidentiary deficiencies in the record. For the reasons already noted, this belated switch in litigation tactics cannot save the day for appellant.

CONCLUSION

On the record before us, we find that the dispositive preference awarded to Orange County under 307(b) was consistent with agency and judicial precedent and supported by substantial evidence. We therefore affirm the Board's decision.

*So ordered.*