FEDERAL COMMUNICATIONS COMMISSION *v.*
ALLENTOWN BROADCASTING CORP.

No. 451. Argued April 20–21, 1955.—Decided June 6, 1955.

*Warren E. Baker* argued the cause for petitioner. With
him on the brief were *Solicitor General Sobeloff, Marvin
E. Frankel, J. Smith Henley* and *Richard A. Solomon.*

*Donald C. Beelar* argued the cause and filed a brief for respondent.

Mr. Justice Reed delivered the opinion of the Court.

This case involves the disposition of two applications for construction permits for standard broadcast stations. One application was filed by the Easton Publishing Co. for Easton, Pennsylvania, and the other by the Allentown Broadcasting Corp. for Allentown, Pennsylvania. Both were for the same frequency, and, despite the fact that neither station would render service to the other community, simultaneous operation of the two stations would cause mutually destructive interference.

Hearings were first held in 1946 and resulted in the grant of the Allentown application. The Court of Appeals for the District of Columbia Circuit reversed the Commission and remanded the case for "findings upon the comparative needs of the two communities for new radio service and the relative abilities of the applicants to serve the greater need." 85 U. S. App. D. C. 33, 40, 175 F. 2d 344, 351.

New hearings were held in 1951 by an examiner whose initial decision recommended that the Allentown application be granted. Easton filed exceptions to that decision with the Commission, and after oral argument the Commission issued its final decision, disagreeing with its examiner and granting the station to Easton. The Commission made detailed findings of fact as to the qualifications of the applicants and the nature of the communities to be served. Most factors provided no basis for choosing between the applicants. Both were found legally, technically and otherwise qualified to become the licensee; both communities were equally in need of the programs proposed to be broadcast by each applicant. One factor, however, was crucial in determining, under § 307 (b) of

the Communications Act,[1] which applicant should receive the license. Allentown had three local stations; Easton only one. The Commission recognized that Allentown was a city almost triple the size of Easton and growing at a greater pace, but held that Easton's need for a choice between locally originated programs was decisive.

The Court of Appeals reversed.[2] Its examination of the record in detail demonstrated to it that findings of fact of the Commission that overruled findings of the Hearing Examiner were erroneous. Since these Commission findings, it thought, were the basis for that body's ultimate finding of Easton's ability to serve, it directed the Commission to revaluate the "issue of the relative abilities of the two applicants to serve in the public interest." It held that there was no substantial evidence in the record to support the determination that "the ability of the applicants to serve their respective communities was about equal." It concluded that, without support for this underlying finding, it was improper to apply the "choice of local service" principle. In view of the importance to the administration of the Act, certiorari was granted to review this decision. 348 U. S. 910.

The more important question presented by this certiorari, as stated by petitioner, is whether the Federal Communications Commission, in awarding AM licenses between mutually exclusive applicants for different communities, can select one community over another on the basis of the former's need only if it has first found that the applicants are approximately equal in their ability to serve their respective communities.

---

[1] "In considering applications for licenses, and modifications and renewals thereof, when and insofar as there is demand for the same, the Commission shall make such distribution of licenses, frequencies, hours of operation, and of power among the several States and communities as to provide a fair, efficient, and equitable distribution of radio service to each of the same." 47 U. S. C. § 307 (b).

[2] 94 U. S. App. D. C. ——, —— F. 2d ——, as yet unpublished.

The judgment of the Court of Appeals that such a preliminary finding was necessary was predicated upon the requirement of its earlier decision in this same controversy, which was not appealed, that there must be, as stated above, findings not only on comparative needs of the communities but also as to the "relative abilities of the applicants to serve the greater need." 85 U. S. App. D. C., at 40, 175 F. 2d, at 351. The Court of Appeals, as we understand its opinion in the present case, thought that the "choice of local service" principle applied only where community need and applicant ability to serve such need were both approximately equal.[3]

The Commission challenges this position. It asserts that, when mutually exclusive applicants seek authority to serve different communities, the Commission first determines which community has the greater need for additional services and then determines which applicant can best serve that community's need. Otherwise, argues the Commission, the needs of the community would be

---

[3] The court said:

"This 'choice of local service' principle is a gloss on § 307 (b) of the Communications Act of 1934, *supra*. It was first applied by the Commission in Northwestern Ohio Broadcasting Corp., upon the crucial findings that the choice between the two communities was 'indeed a difficult one,' and that both applicants 'propose[d] to render meritorious program services designed to meet the needs of the respective communities . . . .' Since we affirmed on appeal because there was 'no error in the record,' our approval of the 'choice of local service' principle was limited to its application in circumstances of otherwise approximately equivalent community need and applicant ability to serve such need. Although in the present case the Commission purported to find such equivalence, we think there is no substantial evidence in the record as a whole—including the Hearing Examiner's Initial Decision—to support the essential underlying finding that the ability of the applicants to serve their respective communities was about equal. Hence, we hold the Commission's error is fatal to the order under review and requires that the case be remanded for reconsideration by the Commission."

subordinated to the ability of an applicant for another locality. The position of the Commission was made quite clear in its judgment on Allentown's petition for rehearing.[4]

We agree with the contention of the Commission. Section 307 (b), note 1, *supra,* empowers the Commission to allow licenses so as to provide a fair distribution among communities. Fairness to communities is furthered by a recognition of local needs for a community radio mouthpiece. The distribution of a second license to a community in order to secure local competition for originating and broadcasting programs of local interest appears to us to be likewise within the allowable area of discretion. There are other instances of Commission use of community allocation of licenses to secure local means of expression.[5]

---

[4] "This is not a case in which the Commission is called upon to consider the comparative qualifications of two or more applicants proposing to serve the same community; instead, it is a case in which one of the applicants proposes to serve Easton, Pennsylvania, and the other Allentown, Pennsylvania and neither would provide service to the other community. Under such circumstances, the primary determination to be made is that required by Section 307 (b) of the Communications Act; namely, how best to distribute licenses among the several states and communities as 'to provide a fair, efficient and equitable distribution of radio service to each of the same.' In the present case, having determined that Easton, Pennsylvania with only one standard broadcast station was in substantially greater need of a second local facility than the Allentown community which already has four standard broadcast stations, we went on to consider, in accordance with the mandate of the Court of Appeals in the first Easton decision, which of the two applicants would best serve the needs of Easton, Pennsylvania and found that the Easton Publishing Company was such applicant." 9 Pike & Fischer Radio Regulation 889. Not yet officially reported.

[5] *Newark Broadcasting Corp.,* 11 F. C. C. 1269, 1271; *Northwestern Ohio Broadcasting Corp.,* 3 Pike & Fischer Radio Regulation 1945, aff'd, *Sky Way Broadcasting Corp.* v. *Federal Communications Commission,* 85 U. S. App. D. C. 425, 176 F. 2d 951; *Newnan Broad-*

The record of the second hearing shows that the Commission had before it substantial evidence to support its conclusion as to Easton's need and its applicant's superior capacity to serve that need.   In appraising the evidence as to the day and night existing radio service of the two communities, their proposed local programs and their staffs, the Commission concluded that there was little room for choice between communities except for the decisive factor of Easton's need for a competitive standard broadcast service that Allentown already had.   Since only the Easton applicant proposed to originate programs in and for Easton, the Commission awarded the license to that applicant.

In reaching its conclusion to set aside the Commission's order awarding the license to Easton, the Court of Appeals found that the Commission's reversal of its Hearing Examiner was erroneous.   That court analyzed the evidence before the Commission as to Easton's uncertainty on affiliating with radio networks to secure their programs for its listeners, the reluctance, evasiveness and lack of candor of Easton's principal witnesses and the concentration of local communications media in the hands of the Easton applicant who was the publisher of the only local newspaper, the licensee of one of two FM radio stations and of the only television station.   The court agreed with the Examiner and overruled the Commission.   None of the above circumstances are in themselves a bar to the Commission's grant of license.   Each involves appraisals of testimony that put into a record facts derived from various witnesses by interrogation.   There was substan-

casting Co., 11 F. C. C. 1369; *Lee-Smith Broadcasting Co.*, 12 F. C. C. 589; *Finger Lakes Broadcasting System*, 11 F. C. C. 528; *WMAK, Inc.*, 11 F. C. C. 850; *Southern Media Corp.*, 11 F. C. C. 688; *Lake Huron Broadcasting Corp.*, 6 Pike & Fischer Radio Regulation 1185; and see *Vermilion Broadcasting Corp.*, 7 Pike & Fischer Radio Regulation 602 (b).

tial evidence considering the whole record that had to be weighed, pro and con, as to types of programs, evasiveness of witnesses, and the desirability of allocating an additional license to an applicant who already controlled other means of communication.

The Court of Appeals' conclusion of error as to evasiveness relies largely on its understanding that the Examiner's findings based on demeanor of a witness are not to be overruled by a Board without a "very substantial preponderance in the testimony as recorded," citing *Labor Board* v. *Universal Camera Corp.*, 190 F. 2d 429, 430. We think this attitude goes too far. It seems to adopt for examiners of administrative agencies the "clearly erroneous" rule of the Fed. Rules Civ. Proc., 52 (a), applicable to courts. In *Universal Camera Corp.* v. *Labor Board,* 340 U. S. 474, 492, we said, as to the Labor Management Relations Act hearings:

> "Section 10 (c) of the Labor Management Relations Act provides that 'If upon the preponderance of the testimony taken the Board shall be of the opinion that any person named in the complaint has engaged in or is engaging in any such unfair labor practice, then the Board shall state its findings of fact . . . .' 61 Stat. 147, 29 U. S. C. (Supp. III) § 160 (c). The responsibility for decision thus placed on the Board is wholly inconsistent with the notion that it has power to reverse an examiner's findings only when they are 'clearly erroneous.' Such a limitation would make so drastic a departure from prior administrative practice that explicitness would be required."

That comment is here applicable. See also § 8 of the Administrative Procedure Act, 60 Stat. 242.

The Federal Communications Act gives the Commission the power of ruling on facts and policies in the first instance. But its rulings are subject to review by the

Courts of Appeals within the scope defined by *Universal Camera Corp.* v. *Labor Board,* 340 U. S. 474, and *Labor Board* v. *Pittsburgh Steamship Co.,* 340 U. S. 498. The correction of errors of law by a Court of Appeals on review of administrative agencies is committed to this Court through its certiorari jurisdiction. We have found such errors of law in the decision of the Court of Appeals. Therefore, the decision below cannot stand. But it is not our function to reinstate the determination of the Commission. That would make this Court the reviewing body of the ultimate determination of the Commission. The proper disposition is to remand the case to the Court of Appeals for reconsideration of the record but freed from rulings declared erroneous in this opinion.

*Reversed.*

MR. JUSTICE DOUGLAS dissents.

MR. JUSTICE BLACK took no part in the consideration or decision of this case.