**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**WINN–DIXIE GREENVILLE, INC., Respondent.**

**No. 11091.**

United States Court of Appeals Fourth Circuit.

Argued May 3, 1967.

Decided June 2, 1967.

Janet Kohn, Atty., N. L. R. B. (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Warren M. Davison, Atty., N. L. R. B., on brief), for petitioner.

Robert C. Lanquist, Jacksonville, Fla. (Hamilton & Bowden, Jacksonville, Fla., on brief), for respondent.

Before HAYNSWORTH, Chief Judge, and WINTER and CRAVEN, Circuit Judges.

CRAVEN, Circuit Judge.

This is a petition to enforce an order of the National Labor Relations Board requiring Winn-Dixie to offer job reinstatement and make whole one J. L. Smith, and to cease and desist from coercively interrogating employees concerning their union activities and from threatening employees with reprisal for union activity or support.

Until recently, none of Winn-Dixie's grocery supermarket employees (some 18,000 of them) had ever been represented by a labor union.[1] The Company's opposition to union organization is a matter of record.[2] The Board and the Examiner found that the Company was always "constantly on the alert to detect signs of union activity by its employees."

As early as autumn 1962, and again in June 1964, management personnel called Smith to the office to question him. A company vice-president was found to have said to him, "What the hell is this I hear about you signing up drivers?" Later a delivery superintendent accused Smith of being "dissatisfied" with his job and of signing up drivers. Upon Smith's denial (found to have been true at the time made), the superintendent remarked, "[i]t was just grapevine stuff," and said to forget about it. Thereafter, Smith *did* sign up about twenty of the eighty-nine drivers. His union activity lasted about six weeks. On August 14, 1964, he was discharged and told by the superintendent that the time had come for his departure. The Company urges that violation of various rules and general unsatisfactory attitude caused the discharge.

Although the Trial Examiner noted that the Company's opposition to unionization of its employees is "unconcealed," he found that Smith was "spontaneously" discharged by the superintendent because of what he termed a trivial and petty episode involving Smith's failure to remove

1. On November 4, 1964, General Drivers, Warehousemen and Helpers Local Union No. 509, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, won an election in a unit of truck drivers at the Greenville, South Carolina, warehouse by a vote of forty-five to forty-four.

2. See, e.g., Winn-Dixie Stores, Inc., 147 N.L.R.B. 788, enforced, 361 F.2d 512 (5th Cir. 1966); Winn-Dixie Stores, Inc., 143 N.L.R.B. 848, enforced, 341 F.2d 750 (6th Cir. 1965); Winn-Dixie Stores, Inc., 138 N.L.R.B. 1355, enforced, 324 F.2d 502 (5th Cir. 1963), on contempt, 353 F. 2d 76 (5th Cir. 1965).

a few banana blankets from his truck. The Trial Examiner concluded that since a spate of prior reprimands were all issued before the union campaign began they could not be connected with Smith's union activities and served to justify the "spontaneous" discharge.

The Board accepted the subsidiary factual findings of the Trial Examiner, but rejected this reasoning, noting that Smith was a ten-year employee with a record of no formal reprimands until a few months before the election. The Board concluded that the most reasonable inference to be drawn from the record as a whole was that Smith was unlawfully discharged because of his union activities and that the reasons asserted by respondent were fictitious. The Board was influenced to reject the Examiner's inference by the latter's finding that the Company had attempted to bolster the discharge with fictitious reasons and had put into Smith's file written reprimand slips which had never been shown him. A careful analysis of the evidence is contained in the Board's decision and order.[3]

During the organization campaign, in early August 1964, assistant delivery superintendent Miller queried driver William Green about the Union. When Green denied he had been contacted by anyone about the Union, Miller observed, "I don't guess they will knowing the way that you feel about it."

■ Against the background of this Company's hostility to unionization, we think the inquiries made to Green by Miller cross the line from permissible inquiry to coercive interrogation forbidden by the Act. See Daniel Construction Co. v. NLRB, 341 F.2d 805, 812 (4th Cir. 1965); NLRB v. Overnite Transportation Co., 308 F.2d 279, 281 (4th Cir. 1962); NLRB v. Lester Brothers, Inc., 301 F.2d 62, 65–66 (4th Cir. 1962).

■ The Company urges that the Board deviated from established principles of law in rejecting the Trial Examiner's finding that Smith was discharged for valid reasons unconnected with his union activities or sentiments. We think not. "The fact that the Trial Examiner may have reached a different conclusion on some of the questions involved, while a matter for our consideration along with other matters in the record, does not mean that the findings of the Board on these questions are not to be upheld if supported by substantial evidence on the whole record." NLRB v. Thomason Plywood Corp., 222 F.2d 364, 365 (4th Cir. 1955). The Supreme Court has specifically rejected the contention that the findings of an examiner of an administrative agency "based on demeanor of a witness are not to be overruled by a Board without a 'very substantial preponderance in the testimony * * *.'" FCC v. Allentown Broadcasting Corp., 349 U.S. 358, 364, 75 S.Ct. 855, 859, 99 L.Ed. 1147 (1955).

■■ In Universal Camera Corp. v. NLRB, 340 U.S. 474, 492, 71 S.Ct. 456, 95 L.Ed. 456 (1951), the Supreme Court said, with reference to the relationship between the Labor Board and its Trial Examiners: "The responsibility for decision thus placed on the Board is wholly inconsistent with the notion that it has power to reverse an examiner's findings only when they are 'clearly erroneous'." Rule 52(a) of the Federal Rules of Civil Procedure does not apply to the review by administrative agencies of the findings of examiners.

Enforcement ordered.

---

3. 157 N.L.R.B. 54.