BEAUFORT COUNTY BROADCASTING
COMPANY, Appellant,

v.

FEDERAL COMMUNICATIONS
COMMISSION, Appellee,

Barnacle Broadcasting Ltd., Intervenor.

Appeal from an Order of the Federal
Communications Commission.

BEAUFORT COUNTY BROADCASTING
COMPANY, Petitioner,

v.

FEDERAL COMMUNICATIONS COM-
MISSION and United States of
America, Respondents,

Barnacle Broadcasting Ltd., Denton
Channel Two Foundation, Inc., Wafar
Communications, Inc., Public Commu-
nications Foundation For North Texas,
Intervenors.

Nos. 84–1265, 84–1384.

United States Court of Appeals, District
of Columbia Circuit.

Argued May 28, 1985.

Decided April 11, 1986.

Lawrence J. Bernard, Jr., Washington, D.C., for appellant in No. 84–1265 and petitioner in No. 84–1384.

C. Grey Pash, Jr., Counsel, F.C.C., with whom Jack D. Smith, Gen. Counsel and Daniel M. Armstrong, Associate Gen. Counsel, Washington, D.C., were on brief, for appellee in No. 84–1265 and respondents in No. 84–1384. Bruce E. Fein, Washington, D.C., entered an appearance for F.C.C. in Nos. 84–1265 and 84–1384. Edward T. Hand and Robert B. Nicholson, Attys., Dept. of Justice, Washington, D.C., entered appearances for appellee, Department of Justice, in No. 84–1384.

Frank J. Martin, Jr., Washington, D.C., for intervenor Barnacle Broadcasting, Ltd. in Nos. 84–1265 and 84–1384.

James J. Freeman and Jack N. Goodman, Washington, D.C., were on brief, for intervenor Public Communication Foundation for North Texas in No. 84–1384.

Joseph F. Hennessey, Washington, D.C., entered an appearance for intervenor Denton Channel Two Foundation, Inc. in No. 84–1384.

William M. Barnard and James J. Freeman, Washington, D.C., entered appearances for intervenor Wafar Communications, Inc. in No. 84–1384.

Before GINSBURG and BORK, Circuit Judges, and GREENE,* United States District Judge.

Opinion for the Court filed by Circuit Judge BORK.

* Of the United States District Court for the District of Columbia, sitting by designation pursuant to 28 U.S.C. § 292(a).

1. The FCC has dealt with its § 307(b) mandate to provide a "fair, efficient, and equitable distri-

BORK, Circuit Judge:

Petitioner Beaufort County Broadcasting Company challenges a decision of the Federal Communications Commission denying it permission to construct a new FM broadcast station in Beaufort, South Carolina. The Commission granted the mutually exclusive application of Barnacle Broadcasting Company, Ltd. ("Barnacle") to provide first transmission service to Port Royal, South Carolina. Beaufort and Port Royal are adjacent communities, the former having a population of approximately 8600 people and three other local stations, the latter 3000 residents and no other stations. The FCC granted a determinative licensing preference to the Port Royal applicant in order to fulfill the mandate of the Communications Act of 1934 ("the Act") "to provide a fair, efficient, and equitable distribution of radio service" throughout the nation. See 47 U.S.C. § 307(b) (1982).

Petitioner claims that the Commission acted arbitrarily in refusing to grant an evidentiary hearing on whether Barnacle would provide genuine first transmission service to Port Royal, or, failing that, to allow Beaufort County to amend its application to disignate the preferred community as its proposed community of license. Beaufort County Broadcasting also asserts that the Commission erred in granting a determinative section 307(b) preference to Barnacle insofar as both applicants proposed to provide high-power regional service that included the two adjacent proposed communities of license. We affirm the FCC's decision.

## I.

On September 18, 1979, Beaufort County Broadcasting applied for Channel 285A, a Class A low-power broadcasting license assigned within the FM Table of Assignments to Beaufort, South Carolina.[1] Bar-

bution" of radio service in part by establishing within its rules a distribution of FM radio channels to specified communities throughout the nation. See Revision of FM Broadcast Rules, 40

nacle, on May 19, 1980, made similar application, though it designated Port Royal as its proposed community of license pursuant to a now-defunct Commission rule allowing an applicant to locate a Class A FM station within ten miles and a higher power Class B or C FM station within fifteen miles of a community listed within the Table of Assignments. *See* former 47 C.F.R. § 73.-203(b) (1982), deleted in *The Suburban Community Policy, the Berwick Doctrine and the De Facto Reallocation Policy,* 93 F.C.C.2d 436 (1983) (*"Suburban Community Policy/Berwick Reconsidered"*). On February 11, 1981, after a separate rulemaking, the FCC amended its Table of Assignments and substituted Channel 259, a higher power Class C FM station, for the Class A station that had previously been assigned to the city of Beaufort, and allowed Beaufort County Broadcasting and Barnacle to amend their applications to reflect this change. *See Amendment of Section 73.202(b), Table of Assignments, FM Broadcast Stations (Beaufort and Ridgeland, South Carolina),* 57 Rad.Reg.2d (P & F) 1559 (1981). The FCC, according to its practice at that time, conducted a hearing to determine which of the two mutually exclusive applicants' proposed communities had the greater need for a station. *See Beaufort County Broadcasting Co.,* 94 F.C.C.2d 572, 573 (Rev.Bd.1983).

On September 29, 1981, Beaufort County Broadcasting moved to add a so-called *Berwick* issue to the hearing, alleging that Barnacle did not realistically propose to serve Port Royal and should not, therefore, receive a dispositive section 307(b) preference for providing first transmission service to that community. *See* Joint Appendix ("J.A.") at 142; *see also Berwick Broadcasting Corp.,* 20 F.C.C.2d 393 (1969), *modifying* 12 F.C.C.2d 8 (Rev.Bd. 1968), *on remand, P.A.L. Broadcasters, Inc.,* 40 F.C.C.2d 546 (Rev.Bd.1973) (holding that if one applicant raised a *prima facie* case that a mutually exclusive applicant did not realistically propose to serve the preferred community specified in the

latter's application, the latter bore the burden of showing that the proposed community has distinct and unmet needs that the proposed station would serve), *overruled, Suburban Community Policy/Berwick Reconsidered,* 93 F.C.C.2d 436, 449 (1983). Beaufort County Broadcasting relied in its motion upon three facts: (1) that Barnacle had originally planned to designate Beaufort as its proposed city of license and had fully prepared an application with that in mind; (2) that after Barnacle's last minute change of proposed community, it nonetheless submitted the identical programming proposal that it had prepared for Beaufort; and (3) that Beaufort and Port Royal enjoyed a close relationship that raised doubt as to the legitimacy of a section 307(b) distinction between the two. *See* J.A. at 144, 153–54.

The Administrative Law Judge ("ALJ") refused to add a *Berwick* issue to the proceeding. Relying on *Bie Broadcasting Co.,* 81 F.C.C.2d 1 (Rev.Bd.1980), which held that an applicant had to make "a stringent threshold showing" and "raise a substantial question" whether the "applicant [would] not realistically serve his community," *id.* at 9, the ALJ found Beaufort County Broadcasting's assertions as to Barnacle's true intention in designating Port Royal to be too "speculative" to warrant the addition of a *Berwick* issue. J.A. at 284.

On December 21, 1981, Beaufort County Broadcasting made a second motion for the addition of a *Berwick* issue, based on evidence that the designation of Port Royal as the proposed community had been made on the advice of an attorney, following his analysis of section 307(b), and that his recommendation had been immediately accepted by Barnacle's management without any investigation into Port Royal itself. *See* J.A. at 288–89. The ALJ again rejected the petitioner's motion, noting that, in addition to the reasons stated in his earlier ruling on this question, the mere fact that Barnacle might have acted out of a desire to obtain a section 307(b) preference would

F.C.C. 747 (1963). The FM Radio Table of Assignments appears at 47 C.F.R. § 73.202 (1985).

not provide a basis for the addition of a *Berwick* issue. *See* J.A. at 303.

Some five months after the disposition of the second *Berwick* motion, in December, 1982, the ALJ granted Barnacle the disputed license for a Class C FM station. *See Beaufort County Broadcasting Co.,* 94 F.C.C.2d 578 (ALJ 1982). The ALJ noted that Beaufort and Port Royal have "identical primary aural broadcast services," and thus neither has a "greater reception service need" to weigh in the section 307(b) calculus. *Id.* at 616. As for transmission needs, however, the ALJ found that Port Royal's need for a first transmission service outweighed Beaufort's need for a fourth, and that Port Royal, therefore, constituted a "preferred" community for section 307(b) purposes. *Id.* at 617. The ALJ also rejected an argument that the broad coverage of the proposed station should negate any section 307(b) advantage enjoyed by Port Royal over adjoining communities within the range of the signal. *Id.* Finding the section 307(b) issue to be "dispositive," therefore, the ALJ awarded the contested Class C FM license to Barnacle. *Id.* at 617–18.

Beaufort County Broadcasting sought review of the ALJ's decision before the Review Board of the FCC, asking, among other things, for review of the ALJ's refusal to add *Berwick* issues to the proceedings. *See* J.A. at 409–18. In the interval between the ALJ's decision and the Review Board's decision, the Commission adopted *Suburban Community Policy/Berwick Reconsidered,* 93 F.C.C.2d 436 (1983). The Commission there concluded that the *Berwick* doctrine and related section 307(b) mechanisms imposed procedural costs that disfavored small community applicants relative to urban rivals with superior financial resources, thus frustrating section 307(b)'s goal of broad dispersion of transmission facilities. *Id.* at 451. The Commission concluded, moreover, that these costly procedures were unnecessary because the FCC could simply refuse to renew a license for an applicant who failed to provide genuine transmission service to the preferred locale in order to serve a broader market. *Id.*

The Commission in that docket, therefore, eliminated the *Berwick* doctrine and related procedures beginning with all proceedings currently pending before the FCC. *Id.* at 457.

Because of this policy change, Beaufort County Broadcasting filed a petition for leave to amend its application to designate Port Royal as its proposed community of license. *See* J.A. at 468–81. Beaufort County Broadcasting argued that the Commission should, in adherence to its long-standing policy, treat the "adoption of new policies affecting the rights of applicants in pending hearing cases ... as an equitable reason for permitting applicants to amend their applications without further examination." *Id.* at 473. Because the elimination of *Berwick* foreclosed its ability to challenge the *bona fides* of Barnacle's proposal to provide first transmission service to Port Royal, Beaufort County Broadcasting contended, this change in policy produced the necessary "substantial impact on Beaufort County Broadcasting's rights." *Id.* at 472.

The Review Board of the FCC rejected petitioner's objections to the ALJ's refusal to add a *Berwick* issue and also denied petitioner's motion for leave to amend its application. *See Beaufort County Broadcasting Co.,* 94 F.C.C.2d 572 (Rev.Bd.1983). The Review Board noted that Beaufort County Broadcasting had conceded that its challenge to the ALJ's failure to add a *Berwick* issue had become moot because of the *Suburban Community Policy/Berwick Reconsidered* decision. *Id.* at 574. The Board nevertheless went on to consider the AlJ's refusal to add a *Berwick* question for hearing, recognizing the interdependence of that issue and the issue of the desired amendment of Beaufort County Broadcasting's application. *Id.* at 575. Holding that the motion to add a *Berwick* issue had twice properly been rejected, the Board concluded that elimination of the *Berwick* doctrine did not have "substantial impact" on Beaufort County Broadcasting's rights and that amendment of the application was thus inappropriate. *See id.*

Petitioner also contended that a proposal for a high-power regional station that would serve two adjacent proposed communities of license should not lead to the grant of a section 307(b) preference to one of those communities. This argument proceeded from *Huntington Broadcasting Co. v. FCC*, 192 F.2d 33 (D.C.Cir.1951), which held that where a suburban applicant proposes a high-powered frequency covering a central city, that applicant should have no determinative section 307(b) advantage over other applicants in the urban area. *See id. Huntington's* premise is that where integrally related communities constitute a single metropolitan transmission service area, individual communities' needs should be presumed satisfied by the aggregate of stations in that area. *See Huntington Broadcasting Co.*, 14 F.C.C. 563, 584 (1950). The contest between Beaufort County Broadcasting and Barnacle, however, did not involve a central city and a suburb. The Review Board refused to apply the *Huntington* doctrine to competing small communities "without substantial evidence ... that Port Royal's need for a first local transmission facility is being met by stations located in other communities." 94 F.C.C.2d at 576. The Review Board thus upheld the ALJ's grant of a determinative section 307(b) preference and license to Barnacle. Petitioner then unsuccessfully sought both reconsideration before the Review Board, *see* J.A. at 518, and review before the full Commission. *See id.* at 531. Petitioner renews before us substantially the arguments made before the Commission.

## II.

Beaufort County Broadcasting's appeal presents two issues traceable to the Commission's *Berwick* doctrine.[2] First, petitioner argues that, prior to the abolition of *Berwick*, it had earned the right to an evidentiary hearing because "substantial questions had been raised concerning the intent of Barnacle to provide a local service to Port Royal, rather than a regional service to ... the surrounding areas," Brief for Beaufort County Broadcasting (No. 84–1265) at 56, and that the FCC's retroactive elimination of *Berwick* arbitrarily deprived it of that right. The second, closely related, *Berwick* argument is that the FCC erred in refusing to allow Beaufort County Broadcasting to amend its application to designate Port Royal as its proposed community of license because the elimination of *Berwick* issues in pending proceedings under *Suburban Community Policy/Berwick Reconsidered* had a substantial and prejudicial impact on its application. *See* Brief for Beaufort County Broadcasting (No. 84–1265) at 61–63. We dispose of both claims on the grounds that the ALJ correctly held, and the Review Board affirmed, that Beaufort County Broadcasting was never entitled to a *Berwick* issue.

*Berwick* stated that if "significant allegations" were raised indicating "a substantial doubt ... as to whether or not the proposal would provide a realistic trans-

---

**2.** Beaufort County Broadcasting raises another issue on appeal. Petitioner argues that the FCC acted arbitrarily in eliminating *Berwick* before determining what procedures to put in its place. Specifically, petitioner refers to the pending *Metropolitan Areas* rulemaking, *see Notice of Proposed Rulemaking*, 48 Fed.Reg. 19,428 (1983), described by the Commission as the "logical next step" after *Suburban Community Policy/Berwick Reconsidered. See id.* at 19,430. In its *Notice,* the FCC proposes that the concept of "community" be redefined so that "proposals to serve specific localities within a general metropolitan area should be considered metropolitan area proposals" where the applicant proposes a regional channel. *See id.* Beaufort County Broadcasting argues that the adoption of such a

proposal might have dictated a different result in *Beaufort County,* and that it was thus irrational for the Commission to eliminate the *Berwick* doctrine issue from a pending proceeding like *Beaufort County* when it was about to consider the merits of this new policy. *See* Brief for Beaufort County Broadcasting (No. 84–1384) at 28 (citing *ITT World Communications, Inc. v. FCC,* 725 F.2d 732, 754 (D.C.Cir.1984)). The short answer is petitioner was not prejudiced by the abandonment of *Berwick* because it had already been held, and we think correctly, that petitioner was not entitled to raise a *Berwick* issue in any event. Petitioner's objection comes down to the claim that it was entitled to the benefit of a policy not yet adopted. That contention is frivolous.

mission service for its specified station location," then the Commission was to conduct an evidentiary hearing in which the applicant seeking the section 307(b) preference had to prove that it would realistically serve its proposed locale. *See* 20 F.C.C.2d at 396. If the applicant failed its burden of proof, it would lose any claimed preference. A crucial aspect of the *Berwick* doctrine, an aspect ignored by petitioner in this appeal, is that the addition of a *Berwick* issue to a proceeding was far from automatic. If the ALJ did not err in finding that Beaufort County Broadcasting failed to make that "stringent threshold showing" in its two motions to add a *Berwick* issue prior to that doctrine's abolition, then Beaufort County Broadcasting had no hearing right to be violated by the FCC's retroactive elimination of the *Berwick* doctrine. Moreover, if the ALJ's disposition of Beaufort County Broadcasting's motions was well-founded, the elimination of the *Berwick* doctrine could have had no substantial impact on Beaufort County Broadcasting's application and would not justify the amendment of that application to designate Port Royal as its proposed community of license. Thus we must turn to the issue whether the ALJ properly denied Beaufort County Broadcasting's motions.[3]

■ We find no error in the ALJ's denial of petitioner's motions. As noted above, *see supra* p. 647, Beaufort County Broadcasting bore the burden of making a "stringent threshold showing" that Barnacle

would not "realistically serve" Port Royal and of raising "a substantial question" as to this matter. *See Bie Broadcasting*, 81 F.C.C.2d at 9. Beaufort County Broadcasting offered no evidence to show that Barnacle's programming would not meet the needs of Port Royal, and it offered only the unsupported affidavit of a Beaufort resident in support of the claim that Port Royal is not a viable, independent community. *See* J.A. at 182. The ALJ rejected as speculative Beaufort County Broadcasting's allegations that Barnacle really intended to serve Beaufort and found that Beaufort County Broadcasting had not "established that Port Royal is not an independent community or that it is totally dependent on and is a suburb of Beaufort." *Id.* at 285. The record supports those findings.

■ The only question, therefore, is whether the ALJ was required to order a hearing on the *Berwick* issue solely on the basis of Beaufort County Broadcasting's claim that Barnacle's proposal for a high-powered, Class C FM station providing reception to some 600,000 people "is wholly inconsistent with Barnacle's expressed intention to serve as a first transmission facility for a town of approximately 3,000 people." Motion for Addition of a Berwick Issue, J.A. at 154. We hold that the ALJ was not required to add a *Berwick* issue on this basis. Prior to *Suburban Community Policy/Berwick Reconsidered*, in the AM context, if a high-powered station's

---

3. Beaufort County Broadcasting suggests that the Review Board never reviewed the ALJ's rulings denying Beaufort County Broadcasting's motions to add a *Berwick* issue. See Brief for Beaufort County Broadcasting (No. 84–1265) at 56. Apparently, petitioner concludes this because the Review Board decision asserted the "at oral argument the Beaufort applicant acknowledged that [its exception to the ALJ's denial of its motions to add a *Berwick* issue] had become moot because of [the] recent Commission policy decision which retroactively deleted the *Berwick* issue from all hearings." 94 F.C.C.2d at 574. That statement by the Board, however, went to the issue of remediability—whether, if the ALJ had erred in denying the motions to add a *Berwick* issue, Beaufort County should receive a hearing on that issue. Indeed, the Review Board decision which is now before us

explicitly stated that "the Commission's abolition of the *Berwick* doctrine did not have a substantial impact on the Beaufort applicant because, prior to that time, it had twice failed to make the factual showing requiring a trial of that issue." 94 F.C.C.2d at 575. This demonstrates plainly that the Board relied on and affirmed the ALJ's denial of Beaufort County Broadcasting's motions to add a *Berwick* issue to the comparative hearing. Hence, without running afoul of the *Chenery* principle, *see SEC v. Chenery Corp.*, 318 U.S. 80, 87, 63 S.Ct. 454, 459, 87 L.Ed. 626 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based."), we may consider whether the ALJ's denial of Beaufort County Broadcasting's motions was correct.

signal would penetrate the geographic boundaries of a community over 50,000 persons and at least twice as populous as the community of license, then a rebuttable presumption arose that the applicant intended to serve the larger community. *See Policy Statement on Section 307(b) Considerations for Standard Broadcast Facilities Involving Suburban Communities,* 2 F.C.C.2d 190, 192–93 (1965), *overruled, Suburban Community Policy/Berwick Reconsidered,* 93 F.C.C.2d at 446–53. But such a presumption never was applied in the FM context. *See WHW Enterprises, Inc. v. FCC,* 753 F.2d 1132, 1136 (D.C.Cir. 1985). We may reasonably infer from the Commission's use of such a presumption in the AM context that, if it had desired to apply such a presumption in FM licensing, it would have done so explicitly.[4] Thus because Beaufort County Broadcasting did not meet the heavy initial burden imposed by *Bie Broadcasting* upon FM applicants seeking the addition of a *Berwick* issue, the ALJ's denial of Beaufort County Broadcasting's motions was proper. *See* 81 F.C.C.2d at 9; *see also United States v. FCC,* 652 F.2d 72, 91 n. 87 (D.C.Cir.1980) (en banc) (asserting that the court has only a "quite limited" role in reviewing an FCC determination that a hearing is not warranted).

Since Beaufort County Broadcasting never made the showing that would have entitled it to a hearing on the *Berwick* issue, it was not affected by the Commission's retroactive abolition of the *Berwick* doctrine. This lack of prejudice also undermines the rationale petitioner advanced in seeking to amend its application to make Port Royal its proposed community of license. We therefore affirm the Review Board's refusal, for lack of good cause, to permit Beaufort County Broadcasting to amend.

### III. ·

■ Beaufort County Broadcasting asserts that the Commission erred in holding that Beaufort and Port Royal did not constitute a single "community" for section 307(b) purposes. *See* Brief for Beaufort County Broadcasting (No. 84–1265) at 36. If the FCC had ruled the other way, Barnacle would not have obtained the determinative section 307(b) preference that it gained by proposing "first transmission service" to the "community" of Port Royal.[5] *See FCC v. Allentown Broadcasting Co.,* 349 U.S. 358, 359–62, 75 S.Ct. 855, 856–58, 99 L.Ed. 1147 (1955) (recognizing as "crucial" for section 307(b) purposes "local needs for a community radio mouthpiece" and the general need "to secure local means of expression"). According to Beaufort County Broadcasting, the Commission should have applied the *Huntington* doctrine to this case. *See Huntington Broadcasting Co. v. FCC,* 192 F.2d 33 (D.C.Cir.1951). The *Huntington* doctrine, in "exceptional" circumstances, has justified the Commission's setting aside a "determinative" section 307(b) issue, such as the first transmission preference, by treating politically separate entities as one. *See Miners Broadcasting Service, Inc. v. FCC,* 349 F.2d 199, 200–01 (D.C.Cir.1965). While this policy arose in the context of treating a suburb as part of a larger metropolitan "community" when the suburban applicant proposed high-power regional service inclusive of the central city, *see Huntington,* 192 F.2d at 34, petitioner urges that the *Huntington* exception to section 307(b) must apply as a matter of law in other contexts. Specifically, Beaufort County Broadcasting contends that the Commission must apply *Huntington* with respect to the small, contiguous non-suburban communities involved in this appeal because "the [competing] applicants wil [sic] provide primary service to each other's communities as well as high powered regional service to essentially the same large areas and populations." Brief for Beaufort

---

4. Petitioner has not raised and we have no occasion to address the question whether the FCC acted rationally in implementing different policies to govern the identical questions for AM and FM licensing.

5. Beaufort County Broadcasting sought to provide Beaufort with its fourth such service.

County Broadcasting (No. 84–1265) at 39. We disagree.

Petitioner's argument characterizes the *Huntington* exception to section 307(b) as one triggered by the scope of geographical coverage of the applicants' proposed signals. Indeed, this does constitute a crucial element of the doctrine. *See Miners Broadcasting Service, Inc. v. FCC,* 349 F.2d at 201. If competing applicants propose substantially the same high-powered service to a broad area, the Commission cannot rationally distinguish among the applicants on the basis of differences in the reception services they propose; no such differences exist. But reception does not constitute the entirety of the section 307(b) mandate to provide a "fair, efficient, and equitable distribution" of radio service to the nation. The Commission also must consider the availability of transmission service to provide communities with adequate outlets for local self-expression. *See Allentown,* 349 U.S. at 362, 75 S.Ct. at 858. It is the *Huntington* doctrine's concern for the needs of "local self-expression," *see Huntington Broadcasting Co.,* 14 F.C.C. 563, 584 (1950), that Beaufort County Broadcasting has overlooked in focusing exclusively on the scope of signal coverage.

With respect to local transmission service, the *Huntington* doctrine has recognized that, the first transmission service preference notwithstanding, an ostensibly independent and distinct community lacking radio transmission service of local origin might nonetheless have at its disposal adequate broadcast facilities for local self-expression. The Commission has acknowledged, with the approval of this court, that such a situation would obtain if the local community in question constituted "an integral part of [a] vast metropolitan district" containing a multitude of radio services that catered to the needs of the region as a whole, including the needs of those politically distinct communities that did not yet have a first transmission service. *See Huntington,* 192 F.2d at 34; *Armin H. Wittenberg,* 30 F.C.C. 417, 419 (1961). Thus, when a license applicant has designated as its proposed community of license a suburban community integrally a part of a larger metropolitan area, and that applicant has sought a license authorizing enough power to cover the wider area, *Huntington* has required the FCC to disregard "the corporate limits of the ... city named in the applications" and to treat the proposed community as encompassing the entire metropolitan area. *See Broadcasters, Inc.,* 16 Rad.Reg. (P & F) 295, 301 (1957). No single community within the integrated metropolitan area could receive a section 307(b) preference under the *Allentown* rationale when *Huntington* has applied.

For a long time after the adoption of *Huntington,* the scope of the doctrine remained "somewhat obscure" largely because it was unclear under what specific circumstances the Commission would presume the satisfaction of local transmission needs for an otherwise preferred, unserved community. The reception service aspect of the doctrine was relatively uncontroversial; the Commission had only to look at the "power, class of station, and frequency" involved in the proposed license. *See Miners Broadcasting,* 349 F.2d at 202 n. 6. The transmission service issue, however, proved more troublesome. In 1965, this court was able to discern only "some indication" of the factors relied upon by the Commission in this regard: "the distance of the suburb from the central city"; "the size of the suburb, its economic vitality, and its independence from the central city"; and the relevant market for "advertising revenues."[6] 349 F.2d at 202 n. 6. Yet

---

6. The *Miners Broadcasting* court criticized the uncertain scope of application of the *Huntington* doctrine as it had evolved and called for the "establish[ment]" of clearer "[s]tandards governing the scope of ... *Huntington.*" 349 F.2d at 201 n. 6. In the context of FM radio licensing, the FCC responded by adopting the *Berwick* doctrine, holding that "[w]here significant allegations ... indicat[ed] ... a substantial doubt ... as to whether ... the propos[ed] [license] would provide a realistic local transmission service for [the] specified station location," the applicant had to establish in an evidentiary hearing that the proposed community had

while the precise circumstances in which the Commission would presume satisfaction of local transmission needs remained obscure, the essence of the Commission's approach was clear. With respect to the transmission service aspect of the *Huntington* doctrine, the Commission relied on the integral geographical, socio-political, and economic relationship typically enjoyed by a suburb with the surrounding urbanized area as a substitute for an affirmative showing that the stations in other, nearby communities provided adequately for the programming needs of the otherwise unserved suburb. In its appeal here, Beaufort County Broadcasting asks us to compel the Commission to accept the fact of closely related, contiguous non-metropolitan communities as a substitute for such an affirmative showing.

Nowhere does petitioner claim to have made, or even attempted to make, an affirmative factual showing that the radio stations in surrounding communities provide programming service that meets Port Royal's need for local self-expression. Instead, Beaufort County Broadcasting suggests that it does not need to make such a showing because "neither the Commission nor this Court has ever restricted the *Huntington* policy to dominant city-suburb factual situations." *See* Brief for Beaufort County Broadcasting (No. 84–1265) at 46. This argument is inapposite. The Commission did not attempt to restrict the *Huntington* policy as petitioner contends. Indeed, the Review Board decision now before us concedes that the single community

policy of the *Huntington* doctrine might have applied in the instant case, but only upon a showing Beaufort County Broadcasting did not attempt. In contrast with the suburban context, in which the Commission is willing to presume the satisfaction of a suburban community's transmission needs because of the relationship of the suburb to the urbanized area, the Board in dealing with the present non-metropolitan context indicated that "without substantial evidence [the FCC] cannot presume that Port Royal's need for a first transmission service is being met by stations located in other communities." 94 F.C.C.2d at 576. We turn, therefore, to the question whether the Commission has acted rationally in applying a more stringent *Huntington* doctrine threshold when dealing with a non-metropolitan, rather than a central city-suburban, context.

Underlying the Commission's original decision to adopt the *Huntington* policy exception was an assumption that the overlapping transmission needs of the central city and contiguous suburban communities, along with the multiplicity of available radio outlets in the typical metropolitan area, would lead in the aggregate to the satisfaction of a given community's needs for local self-expression. The Commission in *Huntington* expressly stated, "We ... believe that the programs of a station located in [one] of the contiguous communities [in the metropolitan area], if geared to the needs of the people of the city of its location, would also be geared to serve the needs of

unique unmet needs that the proposed station would realistically serve. *See Berwick,* 20 F.C. C.2d at 396. *Berwick* was the means by which the FCC implemented the principles of *Huntington* in the FM radio context for 14 years until the 1983 abolition of the *Berwick* doctrine in the *Suburban Community Policy/Berwick Reconsidered* rulemaking.

The *Huntington* doctrine, however, did not die with *Berwick.* After the issuance of a decision in the pending *Metropolitan Areas* docket, *see supra* note 2, the Commission will take *Huntington* doctrine issues into account in its designation of communities for the FM Table of Assignments. *See Debra D. Carrigan,* 100 F.C.C.2d 721, 730 (Rev.Bd.1985). Until then, the Commission has indicated that it will apply the

*Huntington* policy by way of the factors that the Commission had used prior to the adoption of *Berwick. See* 100 F.C.C.2d at 731.

It seems unlikely that Beaufort County Broadcasting could compel the Commission to apply the revived version of *Huntington* to this case. Because *Huntington* had been subsumed within the *Berwick* doctrine at the time the ALJ made his determinations that Beaufort County Broadcasting was not entitled to the addition of a *Berwick* issue, any attempt at this stage by Beaufort County Broadcasting to have the Commission treat Port Royal and Beaufort as part of a single community under the *Huntington* doctrine would give Beaufort County Broadcasting an undeserved third attempt to raise a *Berwick* issue.

the people in the adjacent communit[ies]." 14 F.C.C. at 584. Petitioner accepts this underlying assumption as entirely rational and in accord with longstanding precedent in this circuit. *See, e.g., Huntington,* 192 F.2d at 33–35. Petitioner's demand that the Commission apply *Huntington* to a non-metropolitan context, without any factual showing as to the satisfaction of Port Royal's transmission needs by stations in other communities suggests, however, that petitioner believes it irrational not to presume the satisfaction of local transmission needs in this case. We cannot agree.

The *Huntington* doctrine's policy of treating politically separate entities as a single entity is an "exceptional" one, and the FCC bears the burden of justifying and providing "adequate reasons" for any extension of the *Huntington* policy. *See Miners Broadcasting,* 349 F.2d at 200, 201. As a reviewing court, therefore, we are especially loath to order the FCC to extend the policy to other contexts absent a convincing demonstration that such an extension is necessary to satisfy the minimum

requirements of rationality. Petitioner has offered no evidence that transmission service conditions in closely related, contiguous non-metropolitan communities compel or even support a general assumption that any such community lacking transmission service of local origin would nonetheless have its needs satisfied by outlets in the contiguous community or communities. Nor does petitioner direct us to any precedent squarely holding that the Commission must apply the presumption of satisfaction of local transmission needs other than in the central city-suburb context,[7] and we can think of no good reason to create such a precedent now. The Commission is free to require an affirmative factual showing that a community's local transmission needs are being met by stations in surrounding communities before applying the *Huntington* exception to section 307(b) outside the central city-suburb context.

Finally, we must acknowledge that this required factual showing, which is plainly different from the prima facie showing re-

7. Petitioner places substantial emphasis upon Michigan Broadcasting Co., 20 Rad.Reg. (P & F) 249 (1960). This case, however, fails to support Beaufort County Broadcasting's sweeping contentions about the applicability of *Huntington* outside the metropolitan context. *Michigan Broadcasting,* to be sure, involved applicants in two small cities outside a metropolitan context, and the case described *Huntington* in sweeping terms. *See* 20 Rad.Reg. (P & F) at 253. The Commission in *Michigan Broadcasting* merely decided that a *Huntington* issue be added to the licensing proceeding for determination, but made no actual determination whether the two competing communities should be treated as a single community on the merits. Beaufort County Broadcasting does not argue that the Commission refused to consider the *Huntington* issue; rather they insist that, as a matter of law, the Commission must determine that Beaufort County and Port Royal are considered a single community under *Huntington. Michigan Broadcasting* does not support that proposition.

To support its claim, Beaufort County Broadcasting also cites Pillar of Fire, 90 F.C.C.2d 1022 (1982), in which the FCC refused to designate a § 307(b) hearing in the context of competing small town applicants. When the Commission refuses to grant a § 307(b) hearing, that may tend to suggest, though it need not, that the rival communities should be treated as one. While on its face, therefore, *Pillar of Fire* lends some

support to the assertion that Beaufort and Port Royal should be treated as a single community, it does not constitute precedent for the proposition that the Commission must treat them as one community. The Commission has some discretion to determine whether the public interest requires that a § 307(b) issue be designated, *see Radio Greenbrier, Inc.,* 80 F.C.C.2d 107, 116 (1980), and the mere exercise of that discretion, without more, cannot support Beaufort County Broadcasting's sweeping assertion that the Commission must apply the *Huntington* doctrine here. *See Miners Broadcasting Service, Inc. v. FCC,* 349 F.2d 199, 200, 201 (D.C.Cir. 1965) (requiring an explicit statement and "adequate reasons" before extending the "exceptional policy" of *Huntington* ). In *Pillar of Fire,* a renewal proceeding was at issue, and the existing expectations and proven record of the licensee, considerations not present in an initial licensing such as the one before us, may have counseled the FCC to exercise its discretion to deemphasize § 307(b) considerations in order to serve the public interest. But, and this is the essential point, we cannot really tell why the Commission acted as it did in *Pillar of Fire. Pillar of Fire* was a hearing designation order, and broad "legal and policy issues ... cannot be explored in [that] limited context." *See Belo Broadcasting Corp.,* 47 F.C.C.2d 540, 544 (1974). We cannot, therefore, rely on such a precedent for the strong action we are asked to take.

quired under *Berwick, see Bie Broadcasting,* 81 F.C.C.2d at 9, was not enunciated by the Commission prior to the Review Board opinion rejecting Beaufort County Broadcasting's application. Petitioner, therefore, had no notice that such a showing was necessary to defeat the dispositive preference of the competing applicant. Petitioner, however, did not argue lack of notice when it sought Review Board reconsideration and full Commission review. Even in this court, Beaufort County Broadcasting has simply contended that the Commission had to apply the *Huntington* exception as a matter of law. We can, therefore, affirm the Commission on the *Huntington* doctrine issue.

The order of the Commission is

*Affirmed.*