KAREN LECRAFT HENDERSON, Circuit Judge,
concurring in the judgment:
I agree with the majority’s decision to remand to the Drug Enforcement Administration (DEA) but do so on the narrow ground that the DEA’s review sequence in this case appears arbitrary and perhaps even retaliatory. Although the DEA elected not to challenge the ALJ’s decision against revocation, Morall’s license sat in limbo for over one year after the ALJ transmitted the record to the Deputy Administrator (DA) for review on July 14, 2003. It was only after Morall’s counsel wrote a letter of complaint to the Department Of Justice Inspector General that the DA — in a matter of days — issued the final decision reversing the ALJ and revoking Morall’s registration. While the timing may have been mere coincidence, the unexplained and lengthy delay and the rush to judgment following counsel’s letter suggest the review process may have been irregular and therefore arbitrary in violation the Administrative Procedure Act. For this reason I believe remand to the DEA is necessary. That said, I believe the DA’s substantive decision to revoke Morall’s registration is supported by both precedent and substantial evidence and therefore could be sustained in a different procedural posture.
The notion that poor recordkeeping may of itself warrant revoking a controlled substance registration, noted by the DA and rejected by the majority, is neither new nor peculiar to this case. As the DEA observed in Alexander Drug Co., 66 Fed. Reg. 18,299 (DEA 2001), “[p]ast DEA cases consistently have held that the failure to comply with record keeping requirements is a basis for revoking a registration.” 66 Fed.Reg. at 18,303 (citing Singers-Andreini Pharm., Inc., 63 Fed. Reg. 4668 (DEA 1998); Arthur Sklar, d/b/a King Pharm., 54 Fed.Reg. 34,623 (DEA 1989); Summer Grove Pharm., 54 Fed.Reg. 28,522 (DEA 1989); Boro Pharm. and Bell Apothecary, 53 Fed.Reg. 15,151 (DEA 1988)); see also id. at 18,304 (“[Pjast DEA cases have found record keeping violations to be a basis for the revocation of a registration based on the public interest.”) (citing Summer Grove Pharm., supra). In fact, the government has pointed to two cases in which registration has been revoked on this basis. In Alexander Drug, the DEA revoked a pharmacy’s registration because a “persistent pattern of non-compliance [with applicable record keeping regulations], taken together with [the owner’s] failure to testify as to corrective actions taken to prevent future record keeping violations, create an unacceptable risk for the public interest.” 66 Fed.Reg. at 18,304. In RX Returns, 61 Fed.Reg. 37,081 (DEA 1996), the DEA concluded that revoking the registration of a controlled substance disposal company was in the public interest because the company failed to maintain “effective controls against diversion,” noting that its first biennial inventory failed to account for 500 controlled substances, the DEA investigator was unable during an inspection to reconcile records with drugs on hand and the company had unsecured schedule II *185 substances on the premises.[1] The facts here do not of course mirror those in previous revocation cases but the flagrant recordkeeping violations the DEA found in this case (including failure to secure controlled substances) are likewise serious enough to justify revocation. And, in any event, the DA reasonably found significant misconduct on Morall’s part beyond her recordkeeping errors, as will be discussed below.
The DA applied the six-factor test set out in 21 U.S.C. § 823(f), see maj. op. at 173, and concluded that continuation of Morall’s controlled substance registration was inconsistent with the public interest under factors two, four and five.[2] The DA first determined that factors two and five (experience in dispensing controlled substances and compliance with applicable state and federal law) weighed strongly in favor of revocation because Morall had committed “numerous violations of the Controlled Substances Act by failing to adhere to proper record-keeping,” most notably in failing to keep accurate records of, or to secure, her drug inventories. These findings are unassailable and largely undisputed. See Tr. at 231 (Morall characterizing her recordkeeping as “[ajbysmal” and “horrible”); ALJ Op. at 20 (Morall’s violations were “egregious”); ALJ Op. at 7-8 (noting during December 1, 1998 inspection of Morall’s residence DEA investigators found “open bottles of Meridia and phentermine as well as loose pills, candy wrappers, and other trash” in box on closet floor); id. at 9-10 (noting during January 5, 1999 inspection investigators found same drugs stored in unlocked cabinet in closet). As a consequence of Morall’s utter disregard for tracking her controlled substances, the DEA’s final audit revealed that of the substances she handled from November 25, 1997 to January 5, 1999, at least 7,154 dosage units remained unaccounted for.
The DA also found that the fourth statutory factor (conduct which may threaten the public health and safety) supported revocation because of “the numerous occasions that [Morall] provided false information to DEA investigators and repeatedly frustrated their attempts to conduct their investigation.” DEA Dec. at 19. The DA found that such “false and misleading statements ... cannot be excused” because the DEA “cannot maintain the integrity of its regulatory system if its registrants, when asked to provide information required by law, provide false information.” Id. Noting that at the hearing Mo-rall denied intending to mislead the investigators or making false statements, the DA concluded that Morall “ha[d] no credibility, because it is absolutely clear that she lied to the investigators on numerous occasions.” DEA Dec. at 17. Specifically, the DA found that Morall “lied about possessing controlled substances at her house,” “having a safe in her house in which to store controlled substances,” “treating patients from her home,” and “the true identity of a friend for whom she had written prescriptions for controlled substances.” DEA Dec. at 17. The DA *186 further found that Morall “misled the investigators about the existence of patient records” because she “continually maintained that she had controlled substance records at her office, when in truth she did not,” “later admitted that she had tried to create the records from memory” and “made false statements regarding the transfer of drugs.” Id. Finally, the DA found Morall “refus[ed] to cooperate with the DEA investigators,” forcing them to obtain administrative inspection warrants for both her residence and her Steele Street office, and “agreed to assist DEA investigators in their inspection of the Steele Street location, without telling them that she had been evicted from that location.” Id.
While acknowledging that Morall was not “forthcoming,” the majority rejects the DA’s findings that she was not credible and that she intentionally misled the investigators because, it contends, the DA “entirely ignored relevant evidence.” maj. op. at 178 (emphasis in original), namely Mo-rall’s “extensive testimony pertaining to each of these disputed facts,” maj. op. at 178. First, it is clear from the DA’s decision that she did not ignore Morall’s contrary testimony — she simply did not believe it. See DA Dec. at 17 (noting at hearing Morall “claimed that she had never meant to mislead the investigators and denied making false statements” but finding Morall “has no credibility”). In any event, the cited testimony is not compellingly “relevant” to the DA’s findings. The majority points to two specific portions of Morall’s hearing testimony. On the one hand, it cites Morall’s testimony that Dr. Holland, not Morall, had ordered the drugs that were returned to the supplier and that she was unaware of the return until the hearing — this notwithstanding the supplier’s computer printout showed the pharmaceuticals had been purchased by Morall while employed at the Holland’s clinic and returned by her (under her registration number) on May 1, 1998, months after Holland’s clinic closed. See Tr. 333-34. The majority also points to Morall’s hairsplitting statement “I took care of patients from my home but I didn’t actually see patients at my home,” Tr. 351 (emphasis added) (which the majority apparently, and curiously, interprets as contradicting the DA’s statement that Morall had lied about not “treating patients from her home”). Examples of such elaborate parsing are peppered throughout Morall’s hearing testimony. She also testified, for example, that she had not told DEA registration technician Garcia she had a “safe” in her home but rather a “safe place” to store drugs, Tr. 354 (by which she apparently meant a cluttered box on her closet floor, see ALJ Op. at 8); that when she told DEA Investigator Barnhill she had not dispensed drugs since December 1, 1998, she had actually said “I did not dispense from Steele Street,” Tr. 372; and that when she left a voicemail for Barnhill saying the drug records were “in the mail,” she was “on [her] way to the post office” but then changed her mind about mailing them before reaching her destination,[3] Tr. 369-70. The DA’s failure to specifically cite these snippets is unremarkable given that she expressly discredited Morall’s testimony. Nor is it surprising the DA did not directly assail the ALJ’s bare finding that Morall was credible, see maj. op. at 178-79, which finding was apparently based on the same equivocations in her testimony. See ALJ Op. at *187 18.[4]
In sum, the DA’s decision is supported by the record. The majority acknowledges that the DEA (represented here by the DA) “is the ultimate fact-finder.” Maj. op. at 179. As such, the DEA “is not required to adopt the credibility determinations of an administrative law judge” and is not bound by the ALJ’s findings even if they “rested on his evaluation of the credibility of the witnesses.” Kay v. FCC, 396 F.3d 1184, 1189 (D.C.Cir.2005) (citing FCC v. Allentown Broad. Corp., 349 U.S. 358, 363-64, 75 S.Ct. 855, 99 L.Ed. 1147 (1955)). Accordingly, “the question for the reviewing court remains the same whether the agency agrees or disagrees with the ALJ — is the agency’s decision supported by substantial evidence.” Id. In this case the DEA’s final findings regarding Morall’s credibility both during the DEA investigation and subsequently at the DEA hearing are supported by ample evidence, notwithstanding Morall herself may have challenged such evidence in her own testimony.
Finally, I would note that the majority’s lengthy discussion of the DA’s remarks regarding the possibility of diversion or abuse is a red herring. As the majority acknowledges, the DEA’s revocation decision “rests solely on her record-keeping failures and her alleged lying to investigators” and “does not purport to rest on diversion of controlled substances or drug abuse.” Maj. op. at 180. Thus, I do not see how the DA’s remarks can make the unrelated decision to revoke Morall’s registration arbitrary and capricious.
For the foregoing reasons I concur only in the majority’s disposition — remanding to the DEA to reconsider its sanction. I do not agree with the majority’s suggestion that as a matter of law and fact revocation cannot be re-imposed on remand.

. The DEA nonetheless stayed the revocation because the disposal company was engaged in a new industry to which no DEA regulations specifically applied and it had worked with the DEA to address the absence of such regulations.

. As the DEA has repeatedly stated, the statutory factors "are considered in the disjunctive; the Deputy Administrator may rely on any one or a combination of factors and may give each factor the weight she deems appropriate in determining whether a registration should be revoked or an application for registration denied.” Robert A. Smith, M.D., 70 Fed.Reg. 33,207, 33,208 (citing Henry J. Schwartz, Jr., M.D., 54 Fed.Reg. 16,422 (DEA 1989)); see also maj. op. at 173-74.

. In the end, of course, it turned out there were few if any such "records” to mail (only evolving reconstructions), notwithstanding Morall's initial statement to the DEA that they were located at her Steele Street office. See ALJ Op. at 8, 9.

. I do not understand how the ALJ’s determination that Morall "appeared to regret her past conduct” "implicates credibility” as the majority posits. Maj. op. at 179.